Emra Joseph BONHAM, Appellant,

v.

DRESSER INDUSTRIES, INC., a corporation, Appellee.

No. 77–1292.

United States Court of Appeals, Third Circuit.

Argued Oct. 20, 1977.

Decided Dec. 27, 1977.

As Amended Jan. 26, 1978.

James R. Duffy, Fine, Perlow & Stone, Pittsburgh, Pa., for appellant.

Donald E. Seymour, Janice H. Anderson, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for appellee.

Before VAN DUSEN and ROSENN, Circuit Judges, and STERN,* District Judge.

## OPINION OF THE COURT

STERN, District Judge.

Appellant Emra Joseph Bonham filed an action in the United States District Court for the Western District of Pennsylvania against his former employer, Dresser Industries, Inc. The complaint was framed in two counts. Count I, based on the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, charged that Bonham's employment with Dresser was unlawfully terminated on December 31, 1975 "because of his age and for no other just cause." Count II invoked the court's diversity jurisdiction and charged that the termination was a breach of his oral contract of employment actionable under state common law.

Dresser moved to dismiss Count I for lack of subject matter jurisdiction on the ground that plaintiff had failed to file timely charges with both federal and state authorities. Dresser also moved for dismissal of Count II for failure to state a claim. The district court, treating Dresser's motion as a motion for summary judgment, granted judgment for Dresser on both counts.

In granting summary judgment on Count I, the district court determined that the alleged unlawful practice occurred on October 31, 1975, that the federal 180-day period for filing a charge with the Secretary of Labor ran from that date, that Bonham's June 16, 1976 notice to the Secretary of Labor was therefore untimely, and that Bonham's failure to file within 180 days of October 31 was a jurisdictional defect. The district court held, alternatively, that Bonham's ADEA claim was barred for failure to file a charge with state authorities within 90 days. In granting summary judgment

---

* Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

on Count II, the district court held that the complaint failed to state a claim under Pennsylvania law. We reverse the district court's grant of summary judgment on Count I of the complaint; we affirm its disposition of Count II.

Bonham, who was in his late forties when the events giving rise to this litigation took place, began working for Dresser Industries in 1969. Through a series of promotions, he reached the position of "manager-factory accounting" at an annual salary of $28,500.00.

The affidavit of Dresser's vice president states that Bonham's employment terminated on October 31, 1975, that Bonham was informed of the termination on or before October 31, 1975, and that Bonham performed no services as a Dresser employee after October 31, 1975. Bonham's personnel card which Dresser made part of the record, indicates that Bonham was terminated on October 31; this document states that the termination was "by mutual consent."[1]

Bonham argued here and before the district court that the termination occurred on December 31, 1975. His affidavit states that he was informed on October 31 that he *would be* terminated as of December 31, 1975, that he was paid his regular salary, periodically from October 31 through December 31, 1975, that the company kept his insurance coverage effective through December 31, and that he was advised, in writing by the company, that his retirement benefits would be calculated on the basis of a December 31 termination date.[2] However, he does not dispute that October 31, 1975 was the day he was told of his termination and that it was the last day he actually worked.

In January of 1976, Bonham wrote directly to the president of Dresser Industries requesting that he be placed in a different division of the company.[3] On January 19, Dresser's president advised Bonham that he had made arrangements to review other opportunities for Bonham within the company.[4] On February 18, 1976, however, Bonham was notified that there would be

---

1. App. 10a–11a. The company took the position before the district court, for purposes of its motion, and before this Court, for purposes of the appeal, that Bonham was fired. Indeed, central to its argument is its contention that Bonham was told that he was fired on a date certain. Nevertheless, the company apparently still intends to take the position that the employment relationship was severed consensually.

 We sound a note of caution about a grant of summary judgment in circumstances where the facts are unclear and a fuller development of the facts may serve to clarify the application of the law. *See Palmer v. Chamberlin*, 191 F.2d 532, 540 (5th Cir. 1951).

2. App. 14a–19a.

3.
 January 15, 1976
 xxx
 Dear Mr. James:

 . . . . .

 I do not see how Dresser, the prime user of direct costs, can afford to lose a man with 17 years experience in the design and installation of direct cost systems and with knowledge and training in other Dresser financial techniques. Many companies have extablished [sic] a headquarters staff job as a COST CONSULTANT with the responsibility of reviewing existing cost systems to maintain them in compliance with company policy; to advise and assist divi-

sions in the design and installation of new systems; and to see that related inventory controls are maintained.

 . . . . .

 Harbison has made my termination effective January 15 and I wanted to write before I accepted other employment. I know you have recognized the difference in Harbison's profit picture as a result of financial control and may have a use for me elsewhere to accomplish the same result.

 Sincerely yours,
 Joseph Bonham
 App. 20a

4.
 January 19, 1976
 xxx
 Dear Mr. Bonham:
 I have received your letter of January 15 regarding other possible opportunities for employment within Dresser. I do not feel that we should add to the Headquarters staff, the position as Cost Consultant, as you suggested. However, I have asked Bob Shopoff to review what other opportunities there might be in Dresser. After Bob has completed his review, he will be in touch with you directly.
 Sincerely,
 /s/ J. V. James
 App. 21a

no position for him within Dresser Industries.

On June 16, 1976,—229 days after the October 31 date urged by the company, 169 days after the December 31 date urged by Bonham, and 118 days after Bonham received word from Dresser that there were no other positions at Dresser for him—Bonham gave notice to the Secretary of Labor of his intention to sue. On the same date, he notified the Pennsylvania Human Relations Commission of his allegedly wrongful discharge.

The Age Discrimination in Employment Act of 1967 was designed to promote the employment of persons between the ages of 40 and 64 by prohibiting discriminatory employment decisions based on age. See 29 U.S.C. § 631. The substantive provisions of the Act are enforceable both by governmental actions and by private suits brought by aggrieved persons. Prior to the commencement of any action, the Secretary of Labor must be given an opportunity to eliminate the allegedly discriminatory practice through informal methods. 29 U.S.C. § 626(d). In order to provide the Secretary this opportunity to attempt conciliation, an aggrieved person must notify the Secretary that he intends to sue 60 days before commencing an action.

The Act imposes two additional procedural requirements on private litigants. Section 626(d)(1) provides that the 60-day notice of intent to sue must be filed with the Secretary of Labor "within one hundred and eighty days after the alleged unlawful practice occurred . . . ." Section 633 provides, in pertinent part:

> (b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 . . . before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: . . .

Both of these procedural requirements are at issue in this lawsuit.

■ Section 626(d)'s 180-day filing requirement begins to run from the date of the "alleged unlawful practice." At issue here is when that unlawful practice occurred. The litigants agree that the alleged wrongful act was Bonham's termination, but Bonham argues that that occurred on December 31, the date of his last paycheck and the termination of all company benefits. On these facts, we agree with the district court that the termination took place on October 31, 1975, the date urged by Dresser.

■ Although no simple rule can be formulated which will deal adequately with all factual situations, where unequivocal notice of termination and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date, notwithstanding the employee's continued receipt of certain employee benefits such as periodic severance payments or extended insurance coverage. See *Davis v. RJR Foods, Inc.*, 420 F.Supp. 930, 931 n.1 (S.D.N.Y.1976), *aff'd without opinion*, 556 F.2d 555 (2nd Cir. 1977); *Doski v. M. Goldseker Co.*, 11 FEP Cas. 468 (D.Md.1975), *aff'd in relevant part and remanded*, 539 F.2d 1326, 1328 n.3 (4th Cir. 1976); *Payne v. Crane Co.*, 560 F.2d 198, 199 (5th Cir. 1977) (per curiam).

We reject the rule propounded in *Moses v. Falstaff Brewing Corp.*, 525 F.2d 92 (8th Cir. 1975), which looks exclusively to the company's official termination date as reflected in company records. Because, as in the case *sub judice*, a company may use different termination dates for different purposes, the *Moses* rule does not adequately resolve the issue. Moreover, we would be wary of any approach which determines the timeliness of an employee's suit against his employer solely on the basis of records which are within the exclusive control of the employer. On the other hand, we would also view with disfavor a rule that penalizes a company for giving an employee periodic severance pay or other extended benefits after the relationship has terminat-

ed rather than severing all ties when the employee is let go.

The ADEA is humanitarian legislation which must be interpreted in a humane and commonsensical manner; its 180-day filing period is very short. An employee should not be required to take action to enforce his rights while he continues to work and while his employment status is at all uncertain.

 The 180-day period does not begin to run until the employee knows, or as a reasonable person should know, that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer. Until that time he may have reason to believe that his status as an employee has not finally been determined, and should be given an opportunity to resolve any difficulty while he continues to work for the employer. In any event, a terminated employee who is still working should not be required to consult a lawyer or file charges of discrimination against his employer as long as he is still working, even though he has been told of the employer's present intention to terminate him in the future.

We emphasize that this test is not subjective, and, on the facts of this case we believe that the district judge was correct in ruling that the alleged unlawful practice occurred on October 31, 1975 when Bonham ceased to perform services for Dresser Industries with knowledge and on notice that he was not to return to his job.

 Although we agree that October 31, 1975 was the date of the alleged unlawful practice, we do not agree that the action is necessarily foreclosed by Bonham's failure to file within 180 days. Bonham's action is barred only if the 180-day requirement is viewed as strictly "jurisdictional" and not subject to tolling or similar equitable modifications.[5] While it is true, as the district court recognized, that some authority favors the view that the 180-day requirement

is a jurisdictional prerequisite to suit, see *Ott v. Midland-Ross Corp.*, 523 F.2d 1367 (6th Cir. 1975); *Hiscott v. General Electric Co.*, 521 F.2d 632 (6th Cir. 1975); *Powell v. Southwestern Bell Tel. Co.*, 494 F.2d 485 (5th Cir. 1974), the decisions are not all in accord. The Fifth Circuit, while terming the requirement "jurisdictional," has nevertheless found equitable reasons for tolling or waiving. See *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5th Cir. 1975).

 In *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), *aff'd per curiam by an equally divided court*, —— U.S. ——, 98 S.Ct. 600, 54 L.Ed.2d 472, 46 U.S.L.W. 4021 (U.S. Nov. 29, 1977), the Tenth Circuit held that the 180-day rule is merely in the nature of a statute of limitations and therefore subject to possible tolling and estoppel. We believe that *Dartt* represents the better view.

We have searched the ADEA's legislative history for indications as to whether Congress intended that the 180-day requirement be a jurisdictional prerequisite or merely a statute of limitations. We have found nothing there which answers the question. Nor do we find guidance under Title VII. Although the Supreme Court has characterized Title VII's analogous 180-day filing requirements as "jurisdictional," see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (dictum), it has nevertheless addressed the question whether the period would be tolled during the pendency of grievance or arbitration procedures. See *Electrical Workers v. Robbins & Meyers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). Thus, Title VII precedent provides no clear path.

 Our conclusion that the 180-day period is not jurisdictional is based on our view of the design and purposes of the Age Discrimination in Employment Act. This

---

5. We reject the proposition that Bonham may invoke the extended 300-day period of section 626(d)(2) notwithstanding his failure to make a timely state filing. See *infra* at 9–10. Any other rule would mean that plaintiff could intentionally wait until after the state filing period had run, and then take advantage of the lengthier federal filing period. This was surely not the intent of Congress. Cf. *DuBois v. Packard Bell Corp.*, 470 F.2d 973 (10th Cir. 1972).

Court has recognized that the ADEA is remedial and humanitarian legislation which should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment. *Goger v. H. K. Porter Company, Inc.*, 492 F.2d 13, 16 (3rd Cir. 1974). Circumstances may exist where, notwithstanding plaintiff's failure to comply with the letter of the law, the purposes of the statutory requirement—providing the Secretary of Labor with an opportunity to conciliate while the complaint is fresh and giving early notice to the employer of possible litigation—have been substantially served. And cases may arise where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights. See generally, Comment, *Procedural Prerequisites to Private Suit Under the Age Discrimination in Employment Act*, 44 U.Chi.L.Rev. 457 (1977).

 Because we construe the 180-day requirement to be in the nature of a statute of limitations, we conclude that the granting of summary judgment was improper. The affidavits before the district court on Dresser's motion state facts which give rise to a disputed issue of tolling or estoppel. Plaintiff's post-termination reaction was an attempt to secure alternative employment with the company. The letter he received in January from the company's president was optimistic in this regard. The limitations period may have been tolled while Bonham was actively pursuing this attempt amicably to resolve his employment situation and while the company was sending positive signals.[6]

 Furthermore, Bonham maintained before the district court that he was unaware of the rights conferred upon him by the ADEA until some time after December. He stated, by way of affidavit, that Dresser never posted any signs on its premises advising employees of the existence of

the Act, or at least that he never saw any posted.

Title 29 U.S.C. § 627 provides:

> Every employer . . . shall post and keep posted . . . upon its premises a notice to be prepared or approved by the Secretary setting forth information as the Secretary deems appropriate to effectuate the purposes of this chapter.

Such notice is to be posted in prominent and accessible places where it can readily be observed by employees. 29 C.F.R. § 850.10 (1976). The posting requirement was undoubtedly created because Congress recognized that the very persons protected by the Act might be unaware of its existence. Failure to post the required notice will toll the running of the 180-day period, at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights under the Age Discrimination in Employment Act. See *Bishop v. Jelleff Associates, Inc.*, 7 FEP Cas. 510 (D.D.C.1974). *Cf., Hiscott v. General Electric Co.*, 521 F.2d 632 (6th Cir. 1975); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5th Cir. 1975); *Skoglund v. Singer Co.*, 13 FEP Cas. 253 (D.N.H.1975); *McCrickard v. Acme Visible Records, Inc.*, 409 F.Supp. 341 (W.D.Va. 1976). Any other result would place a duty upon the employer to comply without penalty for breach, and would grant to the employee a right to be informed without redress for violation.[7]

On these issues of tolling or equitable modification, questions of fact arise which must be determined by the district court in the first instance. We hold only that the employee is to be given an opportunity to demonstrate the existence of any equitable factors which may have a bearing on the operation of the 180-day statute of limitations.

---

**6.** An employer's records and correspondence, while not dispositive of the date of unlawful termination, may be relied upon by an employee to estop the employer from asserting the defense of an untimely notice of intent to sue.

**7.** If the employer complied with the relevant posting regulations, an employee's assertion that he never saw any notices should not of itself require tolling of the 180-day period in which to file a notice of intent to sue.

Dresser argues that remand is nevertheless unnecessary. Citing *Goger v. H. K. Porter Co., Inc.*, 492 F.2d 13 (3rd Cir. 1974), it contends that even if the 180-day notice period cannot be deemed to have run as of June 16, 1976, summary judgment must nevertheless be granted in its favor because Bonham failed to file a timely statutory notice with the Pennsylvania Commission on Human Relations. In *Goger*, this Court held that § 633(b) requires an aggrieved individual initially to seek redress from the state agency before instituting suit in federal court. See also *McGarvey v. Merck & Co.*, 359 F.Supp. 525 (D.N.J.1973), *vacated without published opinion*, 493 F.2d 1401 (3rd Cir.), *cert. denied*, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 844 (3rd Cir. 1977), *petition for cert. filed*, 46 U.S.L.W. 3108 (U.S. Aug. 30, 1977). Both the *Rogers* and *Goger* courts examined equitable considerations and decided that, on the facts of those cases, the procedural default would not foreclose suit. Failure to go to the state first was not treated as a jurisdictional bar.

 The Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, §§ 951 *et seq.* (Purdon), is a law "prohibiting discrimination in employment because of age and establishing . . . a State authority to grant or seek relief from such discriminatory practice" within the meaning of § 633(b). See *Sutherland v. SKF Industries*, 419 F.Supp. 610 (E.D.Pa.1976); *McGinley v. Burroughs*, 407 F.Supp. 903 (E.D.Pa.1975). Under the Pennsylvania statute, however, an aggrieved individual must file his administrative complaint within only 90 days after the alleged act of discrimination. Pa. Stat.Ann. tit. 43 § 959 (Purdon Supp.1977). In Bonham's case, the Pennsylvania Human Relations Commission deemed Bonham's June 16 notice untimely, and the agency declined to take jurisdiction.

We do not think that it was the intent of Congress to allow states to shrink the federal remedy for age discrimination by imposing limitation periods shorter than the federal ones. If compliance with Pennsylvania's 90-day filing period is deemed a jurisdictional condition precedent to suit under the ADEA, the federal 180-day limitations period becomes 90 days for residents of Pennsylvania, and the availability of the federal remedy is seriously undermined. *Cf. Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975) (Title VII). Moreover, any equitable grounds for relaxing the federal limitations period would evaporate if not recognized by the state.

 We do not hold that the mere existence of a state limitations period which is shorter than the federal one relieves a plaintiff of his obligation to bring his complaint to the attention of the state authorities. Rather, we hold only that if plaintiff files his complaint with the state agency within the federal 180-day period, the state's conclusion that the filing is untimely under state law will not bar the federal suit.[8] We think this rule is in accord with Congressional intention, consistent with *Goger* and *Rogers*, and compelled by our conclusion that the federal 180-day requirement is itself in the nature of a statute of limitations and subject to equitable modification.

We affirm the grant of summary judgment in favor of Dresser on Count II of the complaint. The district court ruled that Bonham's oral contract of employment was terminable at will by either party. However, in reliance on *McGinley v. Burroughs Corp.*, 407 F.Supp. 903 (E.D.Pa.1975), the court held that, under Pennsylvania law, termination of a contract at will for a reason contrary to public policy gives rise to a claim for breach of contract. The district court recognized that the Pennsylvania age discrimination statutes establish that a discriminatory discharge offends the state's public policy and that a state common law

---

**8.** After a complainant initiates state administrative proceedings, he must wait at least 60 days, unless the proceedings are terminated earlier, before bringing suit in federal court. 29 U.S.C. § 633(b). This 60-day period may run concurrently with the 60-day period afforded the Secretary of Labor to attempt conciliation.

claim would lie if Bonham could prove age discrimination, but ruled against Bonham on the ground that the record failed to establish that a younger person was hired to replace him.

█ We do not believe that a complaint of age discrimination will always require proof that the discharged person was replaced by a younger employee; it is enough that he was discharged because of his age. Nor do we think that the record before the district court, before any discovery had been conducted, would permit summary judgment predicated on a factual finding that Bonham had not been the subject of age discrimination.

Moreover, we do not believe that *McGinley* accurately states the law of Pennsylvania. The *McGinley* court failed to consider the Pennsylvania Supreme Court's ruling in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). In *Geary*, Pennsylvania's highest court discussed circumstances under which a discharge arguably in violation of public policy would give rise to a breach of contract claim where the plaintiff was hired under an at-will contract of employment. Plaintiff in that case, a salesman, called to management's attention his belief that a new product which the company was marketing had not been adequately tested and posed a serious danger to potential users. As a result of Geary's efforts, the product was reevaluated and withdrawn from the market, but Geary was summarily discharged. He filed suit claiming that his termination was in violation of public policy and thus gave rise to a cause of action for breach of contract. A majority of the court rejected his claim on the grounds that the public policy considerations were not clear, and that the record disclosed a legitimate reason for the compa-

ny's termination. The court, however, indicated that the result might be different if the mandates of public policy were clear and compelling or the termination violated a statutory duty imposed on the employer.

█ In the instant case, Pennsylvania's public policy on the question of arbitrary age discrimination is manifest. A termination based on age would violate the duties imposed on employers by the Pennsylvania Human Relations Act and would trigger the remedies provided by that act. We conclude that the Pennsylvania courts would not hold that termination of an at-will employee on the basis of age gives rise to an independent common law cause of action for breach of contract in addition to those statutory remedies. We do not believe that the courts of Pennsylvania would hold that the mere passage of the Human Relations Act created a separate common law claim where none had existed before, and where that void had been filled by that very legislation. Judicial reluctance to create such a remedy is evident in *Geary*, and we believe that the courts of Pennsylvania, if directly confronted with the issue, would hold that the Pennsylvania Human Relations Act and the procedures established therein provide the exclusive state remedy for vindication of the right to be free from discrimination based on age.[9]

Accordingly, we affirm the grant of summary judgment on Count II of the complaint. We remand Count I for further proceedings on the question of tolling or equitable modification consistent with the views expressed here.

**9.** Section 962(b) of the Pennsylvania Human Relations Act, as amended, Pa.Stat.Ann. tit. 43, § 962(b) (Purdon Supp.1977), provides that "as to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, [except as provided in subsection (c)] civil or criminal, based on the same grievance of the complainant concerned." Section 962(c) permits a complainant under certain circumstances to

bring an action in the state courts of common pleas "based on the right to freedom from discrimination granted by this act." Thus, the Pennsylvania Supreme Court in other contexts has construed these remedy provisions as exclusive state law remedies once invoked by a complainant. *See Commonwealth Human Rel. Comm'n v. Feeser*, 469 Pa. 173, 178–179, 364 A.2d 1324, 1326–1327 (1976); *Daly v. School Dist. of Darby Township*, 434 Pa. 286, 289–290, 252 A.2d 638 (1969).