Peter STUPPIELLO, for himself and all other men similarly situated, Local 447 International Union of Electrical, Radio and Machine Workers, AFL–CIO, Local 400 International Union of Electrical, Radio and Machine Workers, AFL–CIO and Local 1703 International Union of Electrical, Radio and Machine Workers, AFL–CIO, Appellants,

v.

ITT AVIONICS DIVISION and ITT Defense Communications Division, Divisions of International Telephone and Telegraph Corporation, a Maryland corporation, Defendants and Third-Party Plaintiffs,

v.

INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Third-Party Defendant.

No. 77–1348.

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 1978.

Decided April 3, 1978.

Ruth Blumrosen, Alfred W. Blumrosen, Newark, N. J., for appellant Peter Stuppiello, et al.

Sidney Reitman, Kapelsohn, Lerner, Reitman & Maisel, Newark, N. J., for appellants Local 447 Intern. Union of Elect., Radio and Machine Workers, AFL–CIO, et al.

Thomas L. Morrissey, Laurence Reich, Carpenter, Bennett & Morrissey, Newark, N. J., for appellee.

Before ROSENN and HIGGINBOTHAM, Circuit Judges, and VAN ARTSDALEN, District Judge.*

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Peter Stuppiello brought an action under section 703(a) of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e–2(a) (the "Act"),[1] charging International Telephone and Telegraph Corporation and its several divisions (the "Company")[2] with sex discrimination in the operation of its employee pension plan. The district court entered summary judgment in favor of the Company and plaintiffs appealed. We affirm.

For many years the Company had funded for its employees at its New Jersey plants a non-contributory pension plan which discriminated in favor of women, permitting them to retire at an earlier age than men with the same credited service and with more favorable benefits. Effective September 10, 1964, a new non-discriminatory pension plan was initiated which provided identical mandatory and elective retirement ages and terms of service for both men and women. A dispute arose between the local unions of the International Union of Electrical, Radio, and Machine Workers, AFL–CIO (the "Union"), representing the employees, and the Company as to whether employees working after the effective date of the new plan could become eligible for pensions under the old discriminatory plan. The dispute led to a strike which was ultimately settled in January 1965.

The strike settlement agreement. provided for the freezing of the "accrued benefits" under the old pension plan as of September 9, 1964. Precisely what this provision meant kindled yet another dispute between the parties. The Company took the position that an employee who did not qualify for retirement under the terms of the old plan on the last effective date, September 9, 1964, could not retire thereafter under the terms of the old plan; he would then be bound by the retirement qualifications of the new plan. The Union, on the other hand, took the position that the agreement merely froze the amount of benefits payable as of the last day of the old plan, but that employees could qualify for that level of benefits even if they attained the requisite age and service after September 9, 1964. This dispute, along with other issues pertaining to pensions, became the basis of litigation in the United States District Court for the Southern District of New York between the Union as plaintiff and the Company as defendant. This action was settled in October 1967. The settlement resulted in a compromise embodied in section 4.04(c) of the 1967 Pension Plan.[3] It provided that if an employee's service was discontinued by the Company through

---

* Donald W. Van Artsdalen, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The pertinent provisions of section 703(a), 42 U.S.C. § 2000e–2(a) are:

    It shall be an unlawful employment practice for an employer—(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . .

2. The divisions of the Company involved in these proceedings are ITT Avionics Division and ITT Defense Communications Division.

3. The pertinent provisions of section 4.04(c) of the 1967 Pension Plan are:

    (c) Notwithstanding the provisions of Subsection 4.04(a) and Subsection 4.04(b) above, in the event that a member's service is discontinued by the Company through no fault of the member and the member would have been entitled to a retirement allowance under the terms of the Prior Plan (i. e., (A) his term of service was 20 years or more, and his age was 50 or more if male, or 40 or more if female, (B) his term of service was 15 years or more, and his age was 55 or more if male, or 45 or more if female, or (C) his age was 60 or more if male, or 50 or more if female) had the discontinuance of his service occurred on October 1, 1967, the member shall be entitled, with respect to credited service rendered prior to September 10, 1964, to an allowance equal to the normal retirement allowance set forth in clause (i) of Subsection 4.01(b) reduced by the appropriate percentage taken from the following table. [Table omitted.]

no fault of the employee and he would have qualified for early retirement benefits under the old plan had he been terminated on or before October 1, 1967, then he would be entitled to early retirement benefits pursuant to the schedule of the old plan.

Plaintiff Stuppiello's services were terminated through no fault of his own by the defendant in June 1968 after he had accumulated 23 years of credited service at the age of 45. He was entitled to deferred vested benefits of $932.60 per annum payable at age 65 or $373.04 per annum payable at age 55. If he were a female, however, Stuppiello would have been entitled to an early retirement pension of $1,029 commencing August 1, 1968, which would have been reduced at age 62 to $655 annually. In addition, had he been a female, he would be entitled to receive a vested pension of $179.60 annually at age 65 or $71.88 if paid at age 55. Moreover, the Company would have continued to pay premiums to maintain Blue Cross-Blue Shield benefits for him

and a life insurance policy in the amount of $4,300.

■ The plaintiff Stuppiello and the local unions filed a complaint on behalf of all employees of the defendant in the United States District Court for the District of New Jersey on November 15, 1972. They sought a judgment declaring that extending the right to qualify under the old pension plan violated the Civil Rights Act of 1964, as amended, because of its sexually discriminatory provisions. Additionally, they asked for injunctive relief to restrain the Company from engaging in unlawful pension plan practices, for an accounting to those male employees denied pension rights and benefits because of the sex-based disparate treatment, and for money damages.[4] Stuppiello moved for a judgment of liability asserting that the new plan discriminates against him in violation of the Act because he is a male. The defendant moved for summary judgment contending that the new plan does not discriminate with respect

4. Plaintiffs did not move for certification of a class and none has been certified.

The Company moved to dismiss the complaint alleging, inter alia, that timely filing of a complaint with the Equal Employment Opportunity Commission was a jurisdictional prerequisite to this action with which plaintiffs had failed to comply. Recognizing that Stuppiello did not file his charge with the EEOC until 1972 although he had been discharged in 1968, Judge Whipple found that the plaintiffs could prevail only if they showed that the alleged violation was continuous.

Judge Whipple, after considering analogous cases under Title VII, held that "in the instant case, the discharge was in no way a function of the discrimination. Rather here, the past discrimination has been and is felt each and every month through the loss of a pension check"; thus, Judge Whipple held that Stuppiello was not barred by the time limitation. The company took no appeal from this decision although it did raise the jurisdictional argument in its responsive brief.

Despite the Company's failure to appeal Judge Whipple's decision, we recognize that the jurisdictional issue is always before the court. In *Bonham v. Dresser*, 569 F.2d 187 (3d Cir., 1977), a case under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, we held that the critical date for determining the alleged unlawful act in that factual setting was the last day of work. We stated:

Although no simple rule can be formulated which will deal adequately with all factual situations, where unequivocal notice of termination and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date, notwithstanding the employees continued receipt of certain employee benefits such as periodic severance payments or extended insurance coverage.

569 F.2d at 191. We also discussed Title VII's 180-day filing requirement and stated:

Although the Supreme Court has characterized Title VII's analogous 180-day filing requirement as "jurisdictional," see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (dictum), it has nevertheless addressed the question whether the period would be tolled during the pendency of grievance or arbitration procedures. See *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). Thus, Title VII precedent provides no clear path.

569 F.2d at 192. We held that under ADEA, the 180-day period was not jurisdictional. Because we find Stuppiello's claims without merit, we will avoid embarking upon a journey similar to that taken in *Bonham, supra*, to determine whether the filing requirement under Title VII, 42 U.S.C. 2000e–5, is jurisdictional and whether this claim raises a continuing violation.

to pension credits earned after the Act's effective date. The district court first granted Stuppiello's motion for summary judgment but subsequently, upon further consideration, entered summary judgment in favor of the Company.[5]

The district court found that "Stuppiello will suffer no sexually discriminatory reduction of his pension credits for his post-Act service. Under the new plan, the post-Act service of men and women is treated equally and in Stuppiello's case he will qualify on a sexually non-discriminatory basis for deferred vested pension benefits for his post-Act service." The district court carefully analyzed our opinion in *Rosen v. Public Service Electric and Gas Company*, 477 F.2d 90 (3d Cir. 1973) (*Rosen II*), and concluded that *Rosen* forbids a damage award on account of discriminatory treatment of the pre-Act service "and since the pension sought by Stuppiello would be calculated on a base using only pre-Act service, that case forbids an award to him." We agree.

On appeal to this court, plaintiffs essentially contend that *Rosen* is inapplicable and if applicable should be reconsidered. They also argue that the awarding of a pension to Stuppiello would not involve the retroactive application of Title VII of the Civil Rights Act.

Title VII of the Civil Rights Act of 1964 became effective July 2, 1965. Almost nine months earlier, the Company funded a new plan which, as we have previously indicated, contained identical pension benefits for both male and female employees. Accrued benefits under the old pension plan were frozen as of September 9, 1964.. The compromise settlement growing out of the litigation in the Southern District of New York in no way altered the new pension plan. The Company merely agreed to extend the period of eligibility for early retirement benefits under the old plan from September 9, 1964, to October 1, 1967. No disparity arises from the extension because benefits were based solely upon pre-Title VII service. Employees, male or female, who qualified for pension benefits during the extended period would have been entitled only to the amount of benefits accrued as of the effective date of the Act.

Plaintiffs contend that merely working after July 2, 1965, "produces the post-Act discrimination in eligibility for a pension." The basis for this contention is that if a male and female employee had the same length of service with the Company and were of the same age, employment between July 2, 1965, and October 1, 1967, would have enabled·the female to acquire the right to a pension if she were discharged without fault and "(1) entered the 40–50 age bracket and/or (2) acquired 20 years length of service . . . or (3) had acquired 20 years of service and reached the 40–50 age range before September 9, 1964" and that Stuppiello, as a male, would not be eligible if he had met all of the above criteria. The answer to this contention is two-fold. First, under the plan a female employee with the same age and service credits as Stuppiello would have been over 40 years of age and would have had more than 20 years of service on July 1, 1965, thereby qualifying her under section 4.04(c) of the plan prior to the effective date of Title VII. Therefore, extending the eligibility period after the effective date of the Act would not benefit her. Second, in *Rosen II* we held that a disparately treated male could recover damages only as to benefits based upon service after the effective date of the Act, and not as to service prior

---

**5.** In explaining the reversal in judgment, trial Judge Meanor stated, *inter alia*, that:

My prior and now superseded opinion focused on the proposition that the extension of the ability to attain age and length of service qualifications to October 1, 1967, for a pension to be based on service under the old plan, constituted an amendment of the new plan and thus the creation of new sexually discriminatory retirement rights that, by

agreement of the parties, had not theretofore existed. This was, of course, a misapprehension of fact. It is clear that the extension of the right to attain age and length of service qualifications to October 1, 1967, was not an amendment of the new plan. It was a compromise of the conflicting interpretations of the strike settlement agreement that had been made by ITT and the union.

to July 2, 1965. In the instant case, there is no disparity in *benefits* for service after the effective date of the Act, only a disparity in *eligibility* for benefits predicated on *pre*-Title VII service.

■ We believe the district court properly applied the principles of *Rosen II* to the facts of this case. The Act may not be applied retrospectively and the extension of the eligibility date for early retirement involved no sexually discriminatory reduction in the amount of or entitlement to pensions based upon services after the effective date of the Act.

We are not persuaded that *Rosen* should be reconsidered and, as a panel of this court, we are bound to follow it. Neither are we convinced that *Chastang v. Flynn & Emerick Co.*, 541 F.2d 1040 (4th Cir. 1976), cited by plaintiffs, is applicable to this case. *Chastang* involved an unfunded retirement plan built upon company contributions of a portion of its profits into a fund administered by a committee. For each year of employment both male and female employees received the same credit for their proportionate share of the funds. In the event of early retirement, however, a forfeiture provision in the plan permitted a reduction of the retirees' interest. Although the authorization for forfeiture existed in the plan from its inception, it did not become effective until an employee elected early retirement. Because the forfeiture was selective, allowing males full benefits upon early retirement under certain conditions, the determination to invoke it could not be made until the time of retirement. Therefore, when the plaintiffs took early retirement in 1968 and 1969, and suffered a fifty percent divestiture of their retirement credits—while a female would not have been so divested—both the district and appellate courts held that a discriminatory penalty was imposed upon the plaintiffs "on the dates of their respective retirements." *Chastang v. Flynn & Emerick, supra,* 541 F.2d at 1044. Thus, unlike the instant case the amount of benefits under the plan to the retirees was affected after the effective date of the Act and the finding of a viola-

tion "involved no retroactive application of the Act." *Id.*

We also find no merit in the remaining arguments advanced by the plaintiffs.

The judgment of the district court will be affirmed.