**Jack COLGAN, Plaintiff,**

v.

**FISHER SCIENTIFIC COMPANY, Defendant.**

**Civ. A. No. 88–2645.**

United States District Court,
W.D. Pennsylvania.

Aug. 29, 1990.

James W. Carroll, Jr., Pittsburgh, Pa., for plaintiff.

Edward N. Stoner, II, Pittsburgh, Pa., for defendant.

## OPINION

D. BROOKS SMITH, J.

Plaintiff brought this age discrimination lawsuit alleging that his termination from

---

employment in December, 1986, violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). Defendant has filed a motion for summary judgment, contending that plaintiff's discrimination claim is barred by the statute of limitations and is ripe for summary judgment for failing to raise a genuine issue of material fact as to the allegedly pretextual nature of defendant's reason for the discharge.[1]

The undisputed facts of the case are as follows. Plaintiff was hired by defendant in 1958 as a laborer. Plaintiff worked for defendant continuously from that date until his termination in 1986, received numerous pay raises and during that period was promoted to the salaried position of supervisor of the machine shop and tool room. In January, 1986, defendant offered an early retirement package to plaintiff and other employees. Plaintiff declined to accept this offer.

In August, 1986, plaintiff received a performance appraisal which rated his overall performance as falling below requirements for his job description, and which appraisal stated that absent significant improvement in performance, plaintiff would be subject to demotion, reassignment or separation. This was the first job appraisal received by plaintiff during his tenure with defendant that concluded with a negative overall evaluation of his performance.

In December, 1986, defendant informed plaintiff that his job was being eliminated and that his employment was terminated. Complaint, ¶ 15. Plaintiff was 57 years old at the time of his discharge. Plaintiff was told that his separation from employment, together with the separation of twelve other employees, was part of a reduction in force implemented pursuant to the defendant's policies. Of the thirteen employees terminated, five (including plaintiff) were salaried employees allegedly chosen according to the terms of defendant's Workforce Reduction Policy for Salaried Employees.

Plaintiff filed one charge with the Equal Employment Opportunity Commission alleging that defendants' action to terminate his employment during a reduction in force was intentionally discriminatory against him due to his age. That charge was filed on July 16, 1987, and this lawsuit was commenced on December 5, 1988.

In the Complaint, plaintiff alleges that defendant gave him job assignments which could not be performed single-handedly, that he was denied adequate support staff to complete assignments, that his performance appraisal was false, and that defendant failed to correct the false appraisal. Complaint, ¶ 16. In subsequent submissions, plaintiff alleges that he was replaced by, or that his duties were redistributed to, younger employees.

In its summary judgment motion, defendant asserts that the evidence of record establishes that plaintiff can not prove at trial either that he filed a timely ADEA charge or that the asserted reason for his dismissal was pretextual. Plaintiff has the burden of showing that some genuine issue of material fact exists concerning his claim of age discrimination. In that regard, plaintiff must produce sufficient evidence from which the factfinder could reasonably find for the plaintiff. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). We view the evidence in the light most favorable to the non-moving party. *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). The purpose of Rule 56 is to isolate and dispose of factually unsupported claims and defenses before the trial stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). With these prin-

---

1. Plaintiff's original complaint contained three counts. Plaintiff's first two counts arise under the ADEA statute; the third count was a pendant state tort claim for intentional infliction of emotional distress. By Order of August 17, 1989, the pendent state claim was dismissed on motion of plaintiff. In that same Order, we initially denied defendant's motion for summary judgment. In light of supplemental briefing by the parties, we are revisiting the motion.

ciples in mind, we turn to the two issues raised by defendant.

## I. *Timeliness*

■ Plaintiff has taken the position in this litigation that defendant's discriminatory employment decision was not his actual termination, but instead was his allegedly false August, 1986 evaluation. *E.g.*, Affidavit of Jack Colgan, ¶ 30 (Docket # 25); Memorandum In Opposition to Defendant's Motion For Summary Judgment, dated August 14, 1989 at 10 ("While it is true that the defendant was reducing its workforce at the time Plaintiff was terminated, it is clear that the Plaintiff was fired for one reason, and one reason only, that is because of a poor evaluation received in August, 1986"). In that regard, plaintiff concedes that there was nothing discriminatory about defendant's application of the Workforce Reduction Policy for Salaried Workers, and that his case is based on the theory that, but for the August, 1986 evaluation, he would not have been selected for termination in the December, 1986 reduction in force. Transcript of July 30, 1990 Pretrial Conference at 17 (Docket # 30).[2]

Defendant challenges plaintiff's standing to argue that his August, 1986 evaluation was discriminatory and ultimately led to discharge in December, 1986 because plaintiff's EEOC charge was filed more than 300 days after the evaluation. Thus, Defendant urges, he is precluded from complaining that his evaluation was discriminatory. In support, defendant cites *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and *Lorance v. AT & T Technologies*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989).

Contrary to defendant's repeated assertion that plaintiff did not file *any* administrative charge concerning his 1986 evaluation, we first note that plaintiff's affidavit supporting his EEOC charge clearly references the evaluation and asserts that it was "unfair." However, the affidavit explains that the evaluation was unfair because of the allegedly oppressive workload imposed upon plaintiff, and not due to any discriminatory motive. Affidavit of Edward N. Stoner II (Colgan Deposition Exhibit # 3) (Docket # 13). Notwithstanding this reference to the evaluation, we must determine whether plaintiff can maintain a lawsuit on the theory that his August evaluation is the only allegedly discriminatory decision made by defendant.

The line of cases cited by defendant holds that defendant's allegedly discriminatory conduct, not just the consequences of that conduct, must occur within the applicable limitations period in order to be actionable.[3] In *United Air Lines v. Evans*, the plaintiff challenged her present seniority status. Years before, she had been discriminatorily dismissed by her employer. When rehired, plaintiff was given no seniority credit for her earlier service. Plaintiff sued on her present injury, *i.e.*, her diminished seniority. The Supreme Court held that her claim was untimely, even if the past discriminatory event "might at one time have justified a valid claim against the employer." *Evans*, 431 U.S. at 560, 97 S.Ct. at 1890.

In *Delaware State College v. Ricks*, the Supreme Court held that the actionable event was the employer's denial of tenure and was not the plaintiff's resulting nondiscriminatory termination of employment. Therein, the Court emphasized:

[T]he proper focus is upon the time of the *discriminatory acts*, not upon the

---

**2.** Plaintiff's concession on this point significantly alters our analysis in this case. It is well established that ADEA prohibits a reduction in force that intentionally targets older employees. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 119 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Absent any allegations that the RIF was discriminatory, we will decline to review the nature or operation of the policy.

**3.** *Evans, Ricks* and *Lorance* are Title VII cases; however, Title VII precedents are applicable in interpreting ADEA cases concerning timely exhaustion of administrative remedies. See *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (analogous Sections of Title VII and ADEA to be construed similarly).

time at which the *consequences* of the acts became most painful.

449 U.S. at 258, 101 S.Ct. at 504 (emphasis in the original).

Finally, in *Lorance v. AT & T Technologies,* the Court addressed the question of when the limitations period begins to run in a lawsuit arising out of a seniority system not alleged to be discriminatory on its face or as presently applied. The petitioners in *Lorance,* who filed their EEOC charges and lawsuit in 1983, were challenging the employer's present seniority system by claiming that it was the product of a 1979 modification to the collective bargaining agreement entered into with an intent to discriminate on the basis of sex. The district court granted summary judgment in favor of the employer, finding that the Title VII claims were untimely for failure to file administrative charges within the applicable limitations period. A divided panel of the Court of Appeals affirmed.

The Supreme Court observed that petitioners' claim was "wholly dependent on discriminatory conduct occurring well outside the period of limitations ..." and upheld the district court's grant of summary judgment. 490 U.S. at ——, 109 S.Ct. at 2267. Writing for the majority, Justice Scalia explained the Court's holding with the following negative example:

> Indeed, a given plaintiff could in theory sue successively for not being promoted, for being demoted, for being laid off, and for not being awarded a sufficiently favorable pension, so long as these acts— even if nondiscriminatory in themselves—could be attributed to the 1979 change in seniority. Our past cases, to which we adhere today, have declined to follow an approach that has such disruptive implications.

490 U.S. at ——, 109 S.Ct. at 2269.

In this case, plaintiff admits that his termination pursuant to the terms of the defendant's written policies was nondiscriminatory in and of itself. Transcript of July 30, 1990 Pretrial Conference at 17. He challenges only defendant's motives in issuing his job appraisal; in that regard, he waited until the full effects of his poor rating were manifested during the reduction in force. Presumably, under plaintiff's theory, he would have waited an even longer period of time to file his lawsuit if defendant's economic situation had been healthier and had allowed it to postpone the implementation of the workforce reduction.

Plaintiff submits that his delay has no legal effect because the limitations period does not begin to run until an employee is actually terminated. Plaintiff cites *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), in support. In *Bonham,* our court of appeals examined whether the limitations period commenced on the date plaintiff was notified of his termination, or on the date plaintiff received his final employee benefits and severance benefits, or on the date the employer advised plaintiff that there were no other job positions available for him. In that case, the affected employee performed no services for his employer after the date of notification of discharge. He received three months' benefits and salary thereafter, although he did not report back to work. 569 F.2d at 190.

Unlike the plaintiff in the instant case, the employee in *Bonham* alleged that only his termination was discriminatory, and did not allege that there were any earlier events which amounted to discriminatory conduct. The court of appeals held that the limitations period commenced on the date plaintiff was notified of his termination, adopting the position that notice to the employee had the legal effect of commencing the limitations period:

> The [limitations] period does not begin to run until the employee knows, as a reasonable person should know, that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer.

569 F.2d at 192.

Contrary to plaintiff's interpretation, we do not read *Bonham* as mandating that the limitations period always commences on the last date of employment. Whatever force that argument had at the time *Bon-*

*ham* was issued has been undercut by subsequent Supreme Court decisions. Rather, we understand the teaching of *Bonham* to be that the statute begins to run when the employee becomes aware that he has been adversely affected by an employment decision. Such a reading can be reconciled with the Supreme Court's *Lorance* holding that an employee is required to file a timely administrative charge upon suffering a concrete harm from a "patently" discriminatory seniority system. *Lorance*, 490 U.S. at —— n. 3, 109 S.Ct. at 2266 n. 3. See also *Artis v. U.S. Industry*, 720 F.Supp. 105, 107 (N.D.Ill.1989) (Under *Lorance*, defendant must show that plaintiff knew or should have known at the time of the employer action that he/she had suffered or would suffer concrete harm). It is also consistent with the Court's holding that the limitations periods provided in anti-discrimination statutes are not jurisdictional and are subject to equitable doctrines such as waiver, estoppel and equitable tolling. *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 398, 102 S.Ct. 1127, 1132, 1135, 71 L.Ed.2d 234 (1982).

We are left with the question of when did the plaintiff receive notice sufficient to trigger the limitations period. Plaintiff argues that he did not have adequate notice in August, 1986, that his poor job evaluation would lead to his termination in December. We find that plaintiff was put on notice at the time of his evaluation that his employment status had been impacted. The evaluation expressly provides that he would be reviewed again in ninety days and that, absent significant improvement, he would be subject to demotion, reassignment or separation. In effect, plaintiff was placed on probationary status by the terms of this evaluation at a time when his employer was suffering severe economic difficulties. Affidavit of Mildred T. Flinn, ¶ 7 (Docket # 9). Under these circumstances, plaintiff received unequivocal notice that he had suffered a concrete harm, which harm further manifested itself during the December reduction in force.

Plaintiff's theory that he was not required to file a charge of discrimination until he actually ceased working would op-

erate to circumvent the relatively short limitations period adopted in the statutory scheme. In that regard, the scenario before us echoes of the "disruptive" example rejected by Justice Scalia in *Lorance*. *Lorance*, 490 U.S. at ——, 109 S.Ct. at 2269. We find that plaintiff was required to file an administrative charge with the EEOC within 300 days of his August, 1986 evaluation in order to bring a lawsuit challenging it as discriminatory. 29 U.S.C. § 626(d)(2). Because plaintiff has identified no other allegedly discriminatory conduct by defendant during the relevant time period, we find that summary judgment in favor of defendant is appropriate.

### II. *Pretext*

■ Even if plaintiff's claims had been the subject of a timely EEOC charge, we would have to grant summary judgment in this case because plaintiff has failed to produce any evidence or credible argument which would raise an issue of material fact with regard to pretext.

The analytical framework of an ADEA case is well established. See, *e.g.*, *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 52–53 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). The first two stages of that framework, the plaintiff's prima facie case and the defendant's articulation of a legitimate non-discriminatory reason for its employment decision, are not at issue in this case. Rather, the sticking point in this case is the third stage of the prima facie case, *i.e.*, plaintiff's ability to prove by a preponderance of the evidence that the reasons articulated by defendant are not the true reasons. *Siegel*, 894 F.2d at 53; *Sorba v. Pennsylvania Drilling Co.*, 821 F.2d 200, 202 (3d Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988).

Plaintiff vigorously argues that, given his prior work history, his poor job evaluation in August, 1986, without more, can establish pretext by a preponderance. See, *e.g.* Transcript of July 30, 1990, pretrial conference at 18–19. In furtherance of this argument, plaintiff has submitted affidavits of two co-owners and a personnel

consultant. Affidavits of Harry Walker, Walker Harper and Jay K. Jarrell (Docket # # 21, 22 and 23). Plaintiff's co-workers attest to his commitment to his job; however, this does not rebut his August, 1986 evaluation. As equals or subordinates, these individuals are not in a position to have personal knowledge of plaintiff's performance in light of management objectives. Likewise, Jarrell attests to his belief that defendant violated its own procedures in conducting the August, 1986 evaluation, but he has no apparent personal knowledge of defendant's custom and practice in this regard. His conclusions are based solely on a review of documents. Further, we find much of Jarrell's report to be speculative.

Rule 56(e) specifies that supporting and opposing affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Assuming that Jarrell would qualify as an expert, he is not qualified to testify as to the *content* of defendant's policies absent personal knowledge of those policies. *Hurd v. Williams*, 755 F.2d 306, 308 (3d Cir.1985) (affiant must have personal knowledge and be competent to testify to the matters contained therein); *Carey v. Beans*, 500 F.Supp. 580, 583 (E.D.Pa.1980) (affidavit must be based on personal knowledge and be devoid of hearsay), *aff'd without opinion*, 659 F.2d 1065 (3d Cir.1981). There is no evidence of record that Jarrell worked for defendant or otherwise has such knowledge; thus, his interpretation of defendant's documents is unreliable absent some admissible evidence concerning which, if any, of those policies were in effect at the time of plaintiff's employment or how such policies were applied.

We are left with the bad evaluation, in and of itself, as offered proof of pretext. There is no question that indirect proof can establish pretext. *Chipollini v. Spencer Gifts Inc.*, 814 F.2d 893, 898 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Yet, we have serious doubts that a bad job evaluation, even one

occurring after a long series of good evaluations, is sufficient indirect proof.

Recent Third Circuit precedent supports this view. In *Turner v. Schering–Plough Corp.*, 901 F.2d 335 (3d Cir.1990), our court of appeals discussed the legal significance of favorable job reviews in an age discrimination case. The plaintiff in *Turner* had been employed by defendant for approximately 30 years. Up until his last three years of employment, plaintiff received favorable reviews of his job performance. At that time, a new supervisor was assigned to plaintiff and his reviews began to reflect managerial dissatisfaction with his performance. 901 F.2d at 338. Within a year, plaintiff was demoted and, two years later, plaintiff's job was eliminated as part of a company-wide reorganization. *Id.* at 340.

In *Turner*, the plaintiff relied on his favorable reviews as evidence of the pretextual nature of the defendant's decision to demote him. 901 F.2d at 343. The Third Circuit held that this evidence, without more, did not support an inference of pretext. 901 F.2d at 344. In particular, the court noted that the plaintiff offered no evidence to rebut his supervisor's opinion that he suffered performance deficiencies. *Id.*

Similarly, the plaintiff here is arguing that his poor job review must have been motivated by age discrimination. Yet, as plaintiff's EEOC affidavit reveals, there is no dispute that plaintiff's performance had been affected by added job responsibilities. *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1215 (3d Cir.1988) (no inference created by good or excellent performance in a lower level position), *cert. denied*, —— U.S. ——, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989). "To create a factual dispute as to pretext, [plaintiff] must not only introduce evidence from which a reasonable person could infer he is qualified; he must also introduce evidence that casts doubt on his employer's contention that there was a legitimate business reason for letting him go." *Id.* at 1220. Here there is no evidence, for instance, that plaintiff's job position remained available or was given to another younger employee. Compare *Dreyer v. Arco Chemical Co.*, 801 F.2d

651, 655 (3d Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). Given the record before us, there is no reasonable inference of discrimination created by the job evaluation.

The other event which plaintiff argues creates some reasonable inference is defendant's January, 1986 offer of a voluntary early retirement program. Plaintiff's argument in this regard focuses on the offer itself, and does not allege that anything about the way defendant made the offer was discriminatory. Plaintiff does not contend that he was singled out for early retirement, nor does he allege that defendant applied any coercion in connection with the offer. In fact, defendant has filed an uncontroverted affidavit stating that the early retirement program was offered to "many" employees. Affidavit of Mildred T. Finn, ¶ 8 (Docket # 9).

While there is no clear precedent from our court of appeals concerning the legal effect in an age case of an offer of voluntary early retirement, other circuits have held that there is nothing inherently discriminatory about such an offer absent special circumstances. *Gray v. New England. T & T Co.*, 792 F.2d 251, 255 (1st Cir.1986); *Coburn v. Pan Am World Airways, Inc.*, 711 F.2d 339, 344 (D.C.Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). See also *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 369 (D.N.J.1987) (offer of early retirement does not create a presumption of ADEA violation), *vacated in part on other grounds and appeal dismissed* sub nom. *Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir.1988). We conclude that in this situation no reasonable inference of discrimination can be drawn from defendant's offer of an early retirement option for business reasons.

We find that plaintiff's age discrimination claims are untimely and we grant summary judgment in defendant's favor. Additionally, plaintiff has failed to produce any evidence, direct or indirect, from which an inference of pretext can be drawn.