Peter J. **WAGNER**

v.

**SPERRY UNIVAC, DIVISION OF SPERRY RAND CORPORATION.**

Civ. A. No. 77–1066.

United States District Court,
E. D. Pennsylvania.

Sept. 6, 1978.

Norman Ashton Klinger, Norristown, Pa., for plaintiff.

William H. Brown, III, Paul R. Lewis, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Peter J. Wagner filed the complaint in this action on March 24, 1977. All three counts of the complaint allege that defendant Sperry Univac, which formerly employed Wagner, unlawfully discriminated against him on the basis of his age by refusing to grant his requests for transfers, by later terminating his employment, and by failing to reinstate him. Count I alleges violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1976), *as amended by* Age Discrimination in Employment Act Amendments of 1978, Pub.L. No. 95–256, 92 Stat. 189. Count II alleges violations of the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, §§ 951–963 (Purdon 1964 & Supp.1978). Count III alleges violations of Wagner's employment contract with Sperry Univac. Presently before me is Sperry Univac's motion for partial summary judgment on count I of the complaint, and for summary judgment on counts II and III. *See generally* Fed.R. Civ.P. 56. For the reasons hereafter stated, I conclude that Sperry Univac is entitled to partial summary judgment on count I, that count II should be dismissed for lack of subject-matter jurisdiction, and that Sperry Univac's motion should be denied with respect to count III.

## THE FACTS

On a motion for summary judgment, of course, the court must view the evidence in the light most favorable to the party opposing the motion. *Bishop v. Wood*, 426 U.S. 341, 347 n. 11, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1975); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). With that admonition in mind, the essential facts in this case may be summarized as follows. Peter J. Wagner was hired by Sperry Univac's predecessor[1] in October of 1952. N.T. 22;

---

1. Sperry Univac's predecessor, and Wagner's original employer, was a company known as "Eckert-Mauchly." N.T. 21. The record discloses that Sperry Univac was incorporated in 1955, but it fails to reflect the date that Sperry Univac succeeded Eckert-Mauchly. *Compare* Plaintiff's First Set of Interrogatories (Document No. 5) ¶ 1(a) *with* Defendant's Answers to Interrogatories (Document No. 7) ¶ 1(a). This gap in the record is immaterial, however, for

Volz Affidavit ¶ 3. At that time, he was twenty-five years old. He began as a mechanical technician, and he received successive promotions approximately every two-and-a-half years. During his first ten or twelve years with Sperry Univac, Wagner attended Drexel University in the evenings, and he received a bachelor's degree in Mechanical Engineering in June of 1964. Wagner was then made a mechanical engineer, and, after completing a training program at Sperry Univac, he was assigned to the Blue Bell, Pennsylvania plant, where he worked at designing memory drums and memory discs for particular computer systems manufactured by Sperry Univac. In December of 1967, he became a senior mechanical engineer, and in 1972, he was made a principal engineer. During this period, Wagner received salary increases approximately every twelve or eighteen months. N.T. 52–3, 59.

In February of 1974, while Wagner was assigned to a tape transport development project, Sperry Univac cancelled that project. N.T. 78, 89. Wagner was then assigned to an "OEM" (Original Equipment Manufacturers) project that was aimed at purchasing tape transport development from other manufacturers. N.T. 77, 89; Coffey Affidavit ¶¶ 3, 4. Several months later, Sperry Univac began laying off workers at its Blue Bell plant. N.T. 54, 95–96. Sperry Univac ultimately decided to transfer most activities related to tape technology to its Bristol, Tennessee plant, and Wagner was informed in December of 1974 that he would probably be laid off by the end of March, 1975. N.T. 96–97. None of the personnel connected with the "OEM" project at Blue Bell were transferred to the Bristol plant.[2] N.T. 190.

During the period preceding Wagner's ultimate termination, the personnel department at Sperry Univac made efforts to find another job for him. These efforts are described in the affidavit of Sperry Univac's personnel director:

"Such assistance included circulating [Wagner's] Professional Staff Data Sheet (a detailed resume of his activities with Univac since his hire) among all departments which could have had a need for his type of services, preparing resumes, offering leads for jobs with other companies, arranging interview for possible job openings with Univac, and offering any other assistance Mr. Wagner might have requested."

Volz Affidavit ¶ 6.

Shortly before Wagner's last day at Sperry Univac, he was offered a position comparable to the one he held at that time. However, this position was at Sperry Univac's plant in Utica, New York, and Wagner turned down the offer. N.T. 112–14; Coffey Memorandum, Exhibit 1 to Defendant's Answers to Interrogatories (Document No. 7).

Wagner was laid off on March 28, 1975. Sperry Univac prepared an "Employee Status and Change Notice." Exhibit V–1 to Volz Affidavit. This form reflects that Wagner was laid off, but that he remained eligible for rehire. "Pursuant to Univac's layoff procedure, [he] was given an additional two weeks pay in lieu of notice of his termination, as well as accrued vacation benefits." Volz Affidavit ¶ 5. Thus, Wagner received a paycheck for the two-week period ending April 11, 1975.

For "several months" after his layoff, Wagner believed that he "would be called back to duty" with Sperry Univac. Wagner Affidavit ¶ 5. He was "aware of other

---

this succession evidently took place long before any of the allegedly discriminatory acts for which plaintiff seeks redress, and neither party attaches any legal significance to the fact that Wagner was originally hired by Sperry Univac's predecessor rather than by Sperry Univac itself.

**2.** The record discloses a factual issue with respect to whether Wagner was *offered* a posi-

tion at Sperry Univac's plant in Bristol, Tennessee. Defendant asserts that Wagner was in fact offered such a position. Defendant's Answers to Interrogatories (Document No. 7) ¶ 11(b). At his deposition, however, Wagner testified that he was never offered a position in Bristol. N.T. 190. In my view, this factual issue is immaterial, for reasons that will shortly become apparent.

employees who had been laid off and called back to duty in other positions or under other job titles." *Id.* ¶ 7. Moreover, Wagner "had numerous conversations in person and by telephone with [Univac's] representatives aimed at [his] being called back to duty." *Id.*

On September 26, 1975, Wagner filed with the Secretary of Labor a written notice of his intent to sue Sperry Univac under the Age Discrimination in Employment Act. Exhibit W–3 to White Affidavit. The Department of Labor's Area Director for the Philadelphia area wrote to Sperry Univac that same day, relating the fact that Wagner had filed this notice, and stating that one of its compliance officers would visit Sperry Univac in the near future to begin the informal conciliation process that the Department pursues in all age discrimination cases. Exhibit W–1 to White Affidavit.

On November 13, 1975, Wagner filed a formal complaint with the Pennsylvania Human Relations Commission. Exhibit W–7 to White Affidavit. This complaint alleged that Sperry Univac had discriminated against Wagner on the basis of his age in its decision to lay him off and in its refusal to reinstate or rehire him.

On November 26, 1975, Wagner was interviewed at Sperry Univac and offered a position as a mechanical engineer at the company's plant in Dorval, Canada. Sigg Memorandum, Exhibit 2 to Defendant's Answers to Interrogatories (Document No. 7). Although the salary at this position would have been the same as his exit salary, Wagner turned down this offer. N.T. 115, 139.

On January 8, 1976, Wagner wrote to the Area Director of the Department of Labor, reiterating his intent to sue Sperry Univac under the Age Discrimination .in Employment Act. Exhibit W–4 to White Affidavit. This letter referred in passing to Wagner's earlier notice of intent to sue.

By letter dated May 18, 1976, Sperry Univac offered Wagner a job as mechanical engineer at the Blue Bell plant. Exhibit 9 to Defendant's Answers to Interrogatories (Document No. 7). The salary at this posi-

tion would have been substantially less than Wagner's exit salary, and Wagner turned down the position. In his reply letter to Sperry Univac, dated May 27, 1976, Wagner mentioned his "age discrimination charges" that were pending before both the Department of Labor and the Pennsylvania Human Rights Commission. Wagner stated his belief that Sperry Univac was under a duty to reinstate him at a salary comparable to his exit salary. The letter concluded: "If a suitable offer to return to Sperry Univac is not forthcoming, having exhausted every informal channel, I have retained an attorney and am prepared to file suit . . ." Exhibit 10 to Defendant's Answers to Interrogatories (Document No. 7). Subsequently, on March 24, 1977, Wagner filed this complaint.

## WAGNER'S CLAIM UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT

As I noted earlier, Count I of the complaint alleges that Sperry Univac's actions with respect to Wagner violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1976), *as amended by* Age Discrimination in Employment Act Amendments of 1978, Pub.L.No.95–256, 92 Stat. 189. The Act itself "broadly prohibits arbitrary discrimination in the workplace based on age." *Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978); *see* 29 U.S.C. § 623(a) (1976). Jurisdiction over this claim is conferred by 28 U.S.C. § 1331(a) (1976).

■ Sperry Univac argues that it is entitled to partial summary judgment on the ground that Wagner failed to comply with a procedural requirement embedded in the Act's complex enforcement provisions. *See generally Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); Comment, *Procedural Prerequisites to Private Suit Under the Age Discrimination in Employment Act,* 44 U.Chi.L.Rev. 457 (1977). At issue here is the notice-of-intent-to-sue re-

quirement of section 7(d) of the Act, 29 U.S.C. § 626(d) (1976).[3]

Section 7(d) provides in pertinent part: "No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, or

(2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier."

29 U.S.C. § 626(d) (1976).

Plaintiff does not contend that the 300-day limit of section 7(d)(2) is available to him under the facts of this case. *See Bonham v. Dresser Indus., Inc.*, 569 F.2d 187, 192 n. 5 (3d Cir. 1977), *petition for cert. filed*, 46 U.S.L.W. 3695 (U.S. May 1, 1978) (No. 77–1562). Accordingly, I need only consider whether he has satisfied the 180-day limit of section 7(d)(1).

Plaintiff filed his notice with the Secretary of Labor on September 26, 1975. This was 182 days after his March 28, 1975 layoff, and 168 days after April 11, 1975, the last day of the two-week period for which he received severance pay. Sperry Univac argues that Wagner's notice was therefore untimely with respect to any unlawful discrimination occurring on or before March 28, 1975, although it apparently concedes that Wagner may assert a claim based on its allegedly discriminatory failure to reinstate him. Plaintiff, however, advances three distinct arguments for the proposition that his notice was timely filed as to *all* aspects of his age discrimination claim.

First, Wagner argues that Sperry Univac's actions in denying his requests for reassignment, in later terminating his employment, and in failing to reinstate him up through the present time amount to a single, continuing violation, so that the 180-day period has not yet begun to run. Once this premise is accepted, of course, it follows that Wagner's September 26, 1975 notice was not untimely.

Assuming that the "continuing violation" concept developed in employment discrimination cases under Title VII is applicable in cases brought under the Age Discrimination in Employment Act, I nevertheless conclude that the acts here complained of do not constitute a continuing violation. "The rationale underlying the allowance of actions for continuing discrimination is to provide a remedy for past actions which operate to discriminate against the complainant at the present time." *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (9th Cir. 1975) (en banc) (citations omitted). Wagner, however, does not complain of a past act with a continuing discriminatory effect. Rather, Wagner alleges that Sperry Univac practiced age discrimination in (1) denying his requests for transfers between August of 1974 and April of 1975, (2) terminating his employment in late March or early April of 1975, and (3) failing to reinstate him in a position comparable to the one he formerly held. Although these three claims are not unrelated, I fail to see how Wagner can be said to presently suffer continuing *discriminatory* effects from either (1) Sperry Univac's denial of his requests for transfers or (2) Sperry Univac's decision to terminate him. Rather, it appears that only Sperry Univac's continuing allegedly discriminatory failure to reinstate Wagner can sensibly be said to subject him to present discrimination. As to that claim, Sperry Univac apparently concedes that the 180-day time limit presents no obstacle. With respect to

---

**3.** Section 7(d) of the Act was recently amended in an effort to lower some of the procedural hurdles facing age discrimination plaintiffs. Age Discrimination in Employment Act Amendments of 1978, Pub.L.No.95–256,

§ 4(b)(1), 92 Stat. 189. These amendments, however, apply only to actions brought after April 6, 1978, and so they have no bearing on this case. *Id.* § 4(b)(2).

the other two claims, however, Wagner may not avoid the time limit by invoking the "continuing violation" doctrine.

Wagner also argues that his notice of intent to sue was timely filed because Sperry Univac's alleged unlawful practice "should be deemed to have occurred on or about September 26, 1975." Plaintiff's Memorandum of Law (Document No. 21) at 4. This argument relies heavily on certain language in *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1977), *petition for cert. filed*, 46 U.S.L.W. 3695 (U.S. May 1, 1978) (No. 77–1562).

In *Bonham*, plaintiff was informed on October 31, 1975 that he would be terminated that same day. Although he performed no further services for his employer after that date, he continued to receive his salary until December 31, 1975, the company extended his insurance coverage through that date, and it also computed his retirement benefits based on a termination date of December 31. After the district court entered summary judgment against Bonham based on his untimely notice of intent to sue, Bonham appealed, arguing that the 180-day period should begin to run on the date of his last paycheck, rather than on his last day of work. However, a panel of the Third Circuit rejected that argument, stating, in the language pertinent here:

> "Although no simple rule can be formulated which will deal adequately with all factual situations, where *unequivocal notice of termination* and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date, notwithstanding the employee's continued receipt of certain employee benefits such as periodic severance payments or extended insurance coverage."

569 F.2d at 191 (emphasis supplied, citations omitted).

Although Wagner concedes that March 28, 1975 was his last day of work, he contends that his employment status "remained uncertain" until September 26, 1975, the date on which he filed his notice of intent to sue. Plaintiff's Memorandum

of Law (Document No. 21) at 4. The argument runs as follows: "Plaintiff reasonably believed up until that time that he was going to be reinstated, based upon the fact that other employees who were laid-off were reinstated, and based upon Univac's outward attempts to transfer him to another department." *Id.* (citations to the factual record omitted). Thus, Wagner contends that an essential ingredient of the *Bonham* formula—"unequivocal notice of termination"—had not yet been supplied on March 28, 1975, his last day of work, and so the 180-day period could not have started to run on that date.

■ In my view, this argument rests on a misinterpretation of the *Bonham* language quoted earlier. Where an employee such as Wagner, whose employment is not governed by the terms of a collective-bargaining agreement, receives notice that he is being laid off but that he remains eligible for rehire, he has received "unequivocal notice of termination" notwithstanding the possibility that he will be rehired in the future. Therefore, under *Bonham*, where the date of such notice coincides with the last day of work, that date will be considered the date of the alleged unlawful practice, and the employee will be required to file a notice of intent to sue within 180 days of that date.

■ This approach is entirely consistent with the *Bonham* court's mandate that the Act "be interpreted in a humane and commonsensical manner." 569 F.2d at 192. It is one thing to say that "[a]n employee should not be required to take action to enforce his rights while he continues to work and while his employment status is at all uncertain." *Id.* It would be quite another thing to hold that the employment status of a worker who has been laid off remains "uncertain" so long as (1) he remains eligible for rehire and (2) he reasonably believes that he is likely to be rehired. Once an employee is laid off, his *present* employment status is no longer uncertain; any uncertainty is confined to his *future* employment status. The rule advanced by Wagner would seriously undercut the 180-day filing requirement by confining it to

those cases where the aggrieved employee could not reasonably believe that he or she would likely be rehired at some future date. *Cf. Thomas v. E. I. DuPont de Nemours & Co.,* 574 F.2d 1324, 1330 (5th Cir. 1978) ("refusal to rehire after discharge . . . has been held not to be a continuing violation because of the practical effect of eliminating the notice provision"); *Brohl v. Singer Co.,* 407 F.Supp. 936, 939 (M.D.Fla. 1976) (same). I am unwilling to tinker with the procedural scheme devised by Congress, and I accordingly reject Wagner's argument that the 180-day period does not begin to run so long as the laid-off employee reasonably believes that he or she is likely to be rehired.

Finally, Wagner argues that the 180-day period, even if it began to run on March 28, 1975, was tolled by Sperry Univac's actions with respect to Wagner, so that his September 26, 1975 notice was in any event timely filed. This argument, like the one just considered, is based largely on *Bonham v. Dresser Industries, Inc., supra.*

In *Bonham,* the court of appeals held (for the reasons reviewed earlier) that the 180-day period began to run on October 31, 1975, which was plaintiff's last day of work. The following additional facts are pertinent here:

"In January of 1976, Bonham wrote directly to the president of Dresser Industries, requesting that he be placed in a different division of the company. On January 19, Dresser's president advised Bonham that he had made arrangements to review other opportunities for Bonham within the company. On February 18, 1976, however, Bonham was notified that there would be no position for him within Dresser Industries.

On June 16, 1976,—229 days after the October 31 date urged by the company, 169 days after the December 31 date urged by Bonham, and 118 days after Bonham received word from Dresser that there were no other positions at Dresser for him—Bonham gave notice to the Secretary of Labor of his intention to sue." 569 F.2d at 190–91 (footnotes omitted).

The district court in *Bonham* granted summary judgment for defendant Dresser Industries, in part because it viewed the 180-day period as jurisdictional. The court of appeals reversed and remanded, with the following observations:

"Because we construe the 180-day requirement to be in the nature of a statute of limitations, we conclude that . the granting of summary judgment was improper. The affidavits before the district court on Dresser's motion state facts which give rise to a disputed issue of tolling or estoppel. Plaintiff's post-termination reaction was an attempt to secure alternative employment with the company. The letter he received in January from the company's president was optimistic in this regard. The limitations period may have been tolled while Bonham was actively pursuing this attempt amicably to resolve his employment situation and while the company was sending positive signals."
569 F.2d at 193 (footnote omitted).

▮ This aspect of the *Bonham* decision clearly establishes, at least in this circuit,[4] that the 180-day period is subject to equitable doctrines such as tolling. *Accord, e. g., Reich v. Dow Badische Co.,* 575 F.2d 363, 366–69 (2d Cir. 1978) (by implication); *Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1259–62 (10th Cir. 1976), *aff'd per curiam by an equally divided Court,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 472 (1977); *Woerner v. Bell Helicopter,* 16 FEP Cases 480 (N.D.Tex. Oct. 26, 1977); *Skoglund v. Singer Co.,* 403 F.Supp. 797, 803–05 (D.N.H.1975); *cf. Evans v. Oscar Mayer & Co.,* 580 F.2d 298, at 301 (8th Cir. 1978) (Bright, J., dissenting) (deferral requirement of 29 U.S.C. § 633(b) (1970) is subject to equitable modification).

---

4. The Fifth Circuit, "while consistently recognizing the possibility that under some circumstances equitable considerations might warrant tolling the 180-day period, has never reached that result." *Thomas v. E. I. DuPont de Nemours & Co.,* 574 F.2d 1324, 1330 (5th Cir. 1978) (collecting Fifth Circuit cases); *see, e. g., Quina v. Owens-Corning Fiberglass Corp.,* 575 F.2d 1115, 1117–18 (5th Cir. 1978).

*See generally* S. Rep. No. 95–493, 95th Cong., 1st Sess. 12–13 (1977) (Age Discrimination in Employment Act Amendments of 1978), *reprinted in* [1978] U.S.Code Cong. & Admin.News 976, 987–88; H. R. Conf. Rep. No. 95–950, 95th Cong., 2d Sess. 12 (1978) (same), *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 1000, 1005–06.

Wagner seeks a ruling that the 180-day period was tolled for some (unspecified) period of time, and that his September 26, 1975 notice was thus timely filed. In support of his position, Wagner argues:

"Plaintiff's notice of intent to sue was filed only two days after expiration of the statutory period. Defendant was not in any way prejudiced by that two-day delay, nor was the Department of Labor impeded in its efforts at conciliation. Moreover, Defendant's actions in giving Plaintiff false hope that a job could be found for him lulled Plaintiff into foregoing earlier opportunities to file the notice. Therefore, tolling of the 180-day [period] is appropriate . . . ."

Plaintiff's Memorandum of Law (Document No. 21) at 4–5.

By way of response, Sperry Univac contends that the tolling doctrine should have no application here.

"[Wagner] was not misled in any way as to the finality of his termination or the very small chance of finding another job with Univac at Blue Bell.

Furthermore, from a policy standpoint, tolling in these circumstances would not be desirable. Such a result would require a company, which during a force reduction terminated an employee in the protected age group, to abandon or entirely forego any effort to find another position for the employee. To make such efforts would be to extend its exposure to an ADEA claim by that employee, since the running of the 180-day period would be tolled while such efforts continued. . .

. . . Univac told [Wagner], as they had told dozens of other employees who were terminated as a result of the force reduction, only that it would con-

sider him for any other openings that might arise, but could offer him no promise of reemployment. Univac should not be penalized for having endeavored to find work for such employees, particularly [Wagner], by having such efforts result in an extended tolling of the limitations period established by the ADEA."

Defendant's Memorandum of Law (Document No. 18) at 11–12.

■ Although the matter is not free from doubt, I conclude that equitable tolling of the 180-day period is unwarranted on the facts of this case. This is not a case where the plaintiff allegedly failed to realize the discriminatory basis for his discharge until well after the 180-day period began to run. *See, e. g., Griffin v. First Pennsylvania Bank, N. A.,* 443 F.Supp. 563, 567 (E.D.Pa.1977). Nor is this a case where the employer failed to post notices explaining the Act to its employees, as required by 29 U.S.C. § 627 (1976) and 29 C.F.R. § 850.10 (1977). *See, e. g., Charlier v. S. C. Johnson & Son, Inc.,* 556 F.2d 761, 764–66 (5th Cir. 1977). Nor is this a case where the aggrieved employee was unaware of the 180-day notice requirement due to an "administrative dereliction" by the Department of Labor. *See, e. g., Dartt v. Shell Oil Co., supra,* 539 F.2d at 1260–62; *Abbot v. Moore Business Forms, Inc.,* 439 F.Supp. 643 (D.N.H.1977). Indeed, the notice that Wagner ultimately filed with the Secretary of Labor stated, albeit incorrectly, that "the six month time limit is almost up." Exhibit W–3 to White Affidavit. It thus appears that Wagner knew about the 180-day notice requirement, and he has not suggested otherwise. It further appears that his untimely filing stemmed, at least in part, from a mistaken belief that the 180-day period began to run on April 11, 1975, the last day for which he was paid, rather than on March 28, 1975, his last day of work. Although this misapprehension was unfortunate, Wagner has offered nothing whatsoever to suggest that this mistaken impression could in any way be attributed to the acts or omissions of (1) Sperry Univac, (2) the Department of Labor, or (3) Wagner's

attorney. Thus, to the extent that Wagner attributes his untimely filing to a misinterpretation of when the 180-day period began, his argument "amounts to nothing more than pleading ignorance of the law." *Quina v. Owens-Corning Fiberglass Corp.,* 575 F.2d 1115, 1118 (5th Cir. 1978). Such ignorance, at least when it cannot fairly be attributed to the conduct of another party on whom the employee might reasonably rely, does not warrant tolling of the statutory 180-day period. *Id., see, e. g., Thomas v. Blue Cross Blue Shield of North Carolina,* 449 F.Supp. 1021, 1024–25 (M.D.N.C.1978); *Woerner v. Bell Helicopter,* 16 FEP Cases 480, 482 (N.D.Tex. Oct. 26, 1977).

■ A second aspect of Wagner's final argument also requires discussion. Wagner apparently contends that, apart from any application of equitable tolling, Sperry Univac is estopped from raising the 180-day period as a defense in this action. Wagner's argument, quoted earlier, is that Sperry Univac, by giving him "false hope" that a job would be found for him, "lulled" him into delaying the filing of his notice with the Secretary until September 26, 1975, by which time the 180-day period had already elapsed. Thus, Wagner apparently contends that it would be inequitable to permit Sperry Univac to raise the 180-day period as a defense.

Although Wagner cites no authority (other than *Bonham*) in support of his argument, I note that a similar argument was accepted in *Ott v. Midland-Ross Corp.,* 523 F.2d 1367, 1370 (6th Cir. 1975). In *Ott,* the court stated: "The principle that '. . . no man may take advantage of his own wrong' prevents a defendant whose actions have induced a plaintiff to delay filing a suit until after the running of the limitation period from asserting the statute of limitations as a defense to the action." 523 F.2d at 1370 (citations omitted). Applying that principle, the *Ott* court reversed the district

court's dismissal of a complaint containing allegations that plaintiff "was fraudulently induced not to assert his rights under the Act." 523 F.2d at 1370. The *Ott* court left it to the district court on remand to determine, after a trial, whether the facts proved by plaintiff would justify a holding that defendant was estopped from asserting the Act's statute of limitations [5] as a defense. *Id.*

The difficulty with Wagner's estoppel argument becomes apparent when one seeks to apply the maxim that "no man may take advantage of his own wrong" to the facts of this case. Wagner does not contend that anyone at Sperry Univac misled him as to any fact bearing on his layoff or on his chances of being rehired. Nor does Wagner allege that he was in any way misled by Sperry Univac with respect to its actions in (1) offering Wagner various other jobs, none of which he deemed acceptable, and (2) rehiring other employees who had been laid off. These actions, it is said, led Wagner to the overly optimistic view that he was likely to be offered a position comparable to the one he formerly held. Wagner therefore delayed filing his notice, for he believed that he would soon be rehired. Since Sperry Univac was thus responsible for the untimely filing, he reasons, equity demands that Sperry Univac not enjoy the benefit of Wagner's procedural default.

I cannot accept this contention. To characterize Sperry Univac's placement efforts on behalf of laid-off employees, including Wagner, as "wrongs" simply because Wagner was not ultimately rehired would be narrow-minded in the extreme. Such placement efforts can help to lessen the harshness of an employee's termination, and they should be viewed favorably. *Cf. Bonham, supra,* 569 F.2d at 191–92 (court would "view with disfavor a rule that penalizes a company for giving an employee . . .

---

**5.** *Ott* turned on the plaintiff's failure to file his complaint within the Act's three-year statute of limitations for willful violations, 29 U.S.C. § 255(a), 626(e) (1976), rather than on noncompliance with the 180-day notice requirement of 29 U.S.C. § 626(d)(1). In view of the Third

Circuit's holding in *Bonham, supra,* that the 180-day period is in the nature of a statute of limitations, this difference in no way diminishes the applicability of *Ott* to Wagner's estoppel argument.

extended benefits after the relationship has terminated rather than severing all ties when the employee is let go"). This is not to say that an employer's placement efforts can never estop the employer from asserting the statute of limitations as a defense. Where, for example, the aggrieved employee alleges that misrepresentations were made as to the likelihood of future re-employment, he may be entitled to offer proof of such misrepresentations at trial, in support of his estoppel theory. But in a case such as this, where the employer apparently did nothing more than offer placement services to its laid-off employees, the principle that "no man may take advantage of his own wrong" is hardly apposite.

It may be objected that this resolution of the estoppel argument places the discharged employee in a difficult position. An aggrieved employee may want nothing so much as to be reinstated in a comparable job, and he may be prepared to forego litigation altogether if he is ultimately reinstated. Consequently, if his former employer raises with him the possibility of reinstatement, the employee may understandably be reluctant to jeopardize his chances by taking the seemingly provocative step of filing a notice of intent to sue with the Secretary of Labor. Yet, if he delays filing such notice while he explores the possibility of reinstatement, and if the 180-day period elapses before he has filed his notice, he will then, absent unusual circumstances, have lost the option of filing suit under the Act if he and his employer cannot agree on a mutually satisfactory solution.

■ This objection, however, could be raised with equal force against almost any statute of limitations, not just against the 180-day notice requirement of the Age Discrimination in Employment Act. Stripped to its essentials, the objection is that a party to a dispute should not be required to jeopardize ongoing informal settlement discussions by resorting to the legal process. Yet this is precisely what a statute of limitations does require. At some point in time, and generally at a point fixed by the

legislature, the would-be plaintiff must decide whether or not to pursue his legal remedies, or he will lose them by inaction. In this respect, the 180-day notice requirement of the Act is no different from any other statute of limitations. Where a proper showing is made, untimely filing may be excused, just as failure to bring suit within the applicable limitations period is sometimes excused in other kinds of cases. *See, e. g., Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (where defendant allegedly told plaintiff he had seven years in which to bring suit under the Federal Employers' Liability Act, plaintiff was entitled to offer proof at trial that defendant was estopped from raising the Act's three-year statute of limitations as a defense). A litigant may not, however, avoid the statute of limitations simply because the decision it forces him to make—whether to pursue legal remedies before all avenues of informal settlement are exhausted—is a difficult one.

■ For the reasons stated above, I conclude that, with respect to Wagner's termination, the 180-day period began to run on March 28, 1975. Wagner filed his notice on September 26, 1975, which was 182 days later. The 180-day period was not tolled by any intervening events, and Sperry Univac is not estopped from raising the untimely filing as a defense. Accordingly, Sperry Univac is entitled to judgment as a matter of law on any claim arising from Wagner's termination. With respect to Wagner's allegations of pretermination discrimination in regard to his requests for transfers and reassignments, any claim arising from those earlier events is *a fortiori* time-barred. Sperry Univac is therefore entitled to judgment as a matter of law on any such claim. Finally, with respect to Wagner's claim of discriminatory refusal to reinstate him, the 180-day period does not bar any claim based on events occurring on or after March 30, 1975.

Two other issues require brief comment here. In section 14 of the Act, Congress expressed a measure of deference to state agencies charged with enforcing state laws

prohibiting discrimination in employment based on age. 29 U.S.C. § 633 (1976). Section 14(b) of the Act, in particular,

> "provides that where an act of discrimination occurs in a State which has an age discrimination law and an agency empowered to grant or seek relief from such discriminatory practices, no [federal] suit may be brought . . . before the expiration of sixty days after proceedings have been commenced under State law, unless such proceedings have been earlier terminated."
>
> S. Rep. No. 95–493, 95th Cong., 1st Sess. 6 (1977) (Age Discrimination in Employment Act Amendments of 1978), *reprinted in* [1978] U.S.Code Cong. & Admin. News, pp. 976, 981.

This provision was widely interpreted as *requiring* that an aggrieved employee present his claim to the appropriate state agency, where one exists. *Id.* In this circuit, it was settled law that this initial resort to state authorities was a prerequisite to the maintenance of an action under the federal statute. *Bonham, supra,* 569 F.2d at 194; *Rogers v. Exxon Research & Eng'ring Co.,* 550 F.2d 834, 844 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978); *Goger v. H. K. Porter Co., Inc.,* 492 F.2d 13 (3d Cir. 1974). The court of appeals relaxed this rule somewhat in *Bonham, supra,* holding that the statutory requirement would be satisfied where an aggrieved employee commenced his state proceeding within the 180-day federal limitation period, even though the state itself had a shorter limitation period for complaints based on state law. 569 F.2d at 194.

Thus, under the law as it stood when the parties submitted their briefs, Wagner's extensive delay in filing a complaint with the Pennsylvania Human Relations Commission would have barred him from asserting any claims based on events that took place more than 180 days prior to November 13, 1975, the date on which he ultimately filed his complaint. However, in the recent case of *Holliday v. Ketchum, MacLeod & Grove, Inc.,* 584 F.2d 1221,

1230 (3d Cir. 1978), the court of appeals, sitting en banc, explicitly overruled the *Goger* line of cases and held that "resort to state age discrimination remedies is not a precondition to maintaining a federal suit for age discrimination." *Id.,* at 1230. In light of this recent development, Wagner's delay in filing a complaint with the Pennsylvania Human Rights Commission in no way limits the scope of the federal claims that he may assert in this forum.

Finally, the parties differ sharply over the scope of relief available to Wagner under the Act in the event he prevails at trial. In the prayer for relief accompanying count I of the complaint, Wagner requests (1) reinstatement, (2) damages for lost wages and "other economic deprivations," (3) damages for "emotional distress and humiliation," (4) exemplary damages, (5) attorney's fees and costs, and (6) any other appropriate relief. Complaint ¶ 14. Sperry Univac takes issue with several aspects of the requested relief, and urges that Wagner's claim be dismissed "to the extent it exceeds a prayer for reinstatement, back pay, and attorney's fees." Defendants' Memorandum of Law at 13.

Item (3) clearly exceeds the scope of available relief, for the Third Circuit has explicitly held that the Act does not "authorize recompense for psychic distress attributable to unlawful age discrimination." *Rodriguez v. Taylor,* 569 F.2d 1231, 1241 (3d Cir. 1977); *see Rogers v. Exxon Research & Eng'ring Co.,* 550 F.2d 834, 839–42 (1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). *Accord, Vazquez v. Eastern Air Lines,* 579 F.2d 107 (1st Cir. 1978). Plaintiff points to recent contrary decisions by district courts in the Fourth and Seventh Circuits, and urges me to adopt the position taken in those cases. Needless to say, I am not free to reject a controlling decision by the court of appeals for this circuit.

Item (4), which is a request for punitive damages, is also beyond the scope of relief available under the Act. I am in complete agreement with the result reached in *Dean v. American Security Ins. Co.,* 559

F.2d 1036, 1039–40 (5th Cir. 1977), which extended the Third Circuit's *Rogers* holding to bar an award of punitive damages. As the *Dean* court recognized, the Act provides for an award of "liquidated damages" in the case of a *willful* violation. *See* 29 U.S.C. § 626(b) (1976). Congress apparently adopted the "liquidated damages" concept, borrowed from the Fair Labor Standards Act, in place of authorizing the recovery of exemplary or punitive damages. 559 F.2d at 1039; *cf. Rogers v. Exxon Research & Eng'ring Co., supra*, 550 F.2d at 840 ("If the employer's conduct has been such as to merit punitive treatment, then he is to be penalized by [an award of liquidated damages].")

Sperry Univac also seeks a ruling that item (2) is limited to an award of back pay. However, plaintiff has indicated that the "other economic deprivations" embraced by item (2) are deprivations ancillary to his loss of back pay, such as loss of interest on back pay and loss of pension benefits. As I understand Sperry Univac's position, it does not dispute that items of this nature may be included in an award of back pay under the Act. Accordingly, I will not attempt at this time to specify the precise limits of permissible relief ancillary to an award of back pay. Sperry Univac is, of course, free to renew its motion if and when these issues are more sharply defined. I will, for the reasons stated above, dismiss Wagner's claim under the Act insofar as it requests either punitive damages or damages for emotional distress.

## WAGNER'S CLAIM UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT

As I noted earlier, Wagner also alleges violations of the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, §§ 951–963 (Purdon 1964 & Supp.1978). In his written submissions, Wagner urges that these claims are properly before me under the doctrine of pendent jurisdiction. During oral argument, however, it was suggested these state law claims can be entertained under the diversity jurisdiction. 28 U.S.C. § 1332(a) (1976). Sperry Univac seeks summary judgment in its favor, principally on the ground that subject-matter jurisdiction over these claims is lacking. I conclude that Wagner's claims under the Pennsylvania Human Relations Act must be dismissed for want of subject-matter jurisdiction.

First of all, Wagner certainly has not established that this case falls within the diversity jurisdiction. The factual record before me discloses that Wagner is a "resident" (and presumably also a citizen) of Pennsylvania, and that Sperry Univac is a Delaware corporation with its "principal office" in Blue Bell, Pennsylvania. Complaint ¶¶ 5, 6; Defendant's Answers to Interrogatories (Document No. 7) ¶ 1(b). If Sperry Univac's "principal place of business," 28 U.S.C. § 1332(c) (1976), is also in Blue Bell, Pennsylvania, then diversity is plainly lacking. *See, e. g., Canton v. Angelina Cas. Co.*, 279 F.2d 553 (5th Cir. 1960); *Jaconski v. McCloskey & Co.*, 167 F.Supp. 537 (E.D.Pa.1958); D. Currie, Federal Courts 495 (1975) (jurisdiction is "uniformly" denied where forum state is both the state of defendant's citizenship and the state in which the corporation has its principal place of business). It may be, of course, that Sperry Univac's "principal place of business" is located outside Pennsylvania, even though its principal office is within Pennsylvania. Nothing in the record, however, lends support to this hypothesis. Accordingly, I find no basis whatever for entertaining Wagner's state law claims under the diversity jurisdiction.

I reach the same conclusion with respect to Wagner's argument based on the doctrine of pendent jurisdiction. I will assume that Wagner's claims under both the federal and the state statute "derive from a common nucleus of operative fact," and that article III therefore confers on this court the power to hear Wagner's state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The question then becomes whether "considerations of judicial economy, convenience, and fairness to litigants" militate in favor of exercising this

discretionary jurisdiction. I conclude that, on the facts of this case,[6] the exercise of pendent jurisdiction would be inappropriate.

As I noted earlier, Wagner filed an age discrimination complaint with the Pennsylvania Human Relations Commission on November 13, 1975. Exhibit W–7 to White Affidavit. On January 29, 1978, the Commission determined that it lacked jurisdiction over Wagner's claim because he had not filed his complaint within 90 days of the alleged unlawful act, as required by the Pennsylvania Human Relations Act. Pa. Stat.Ann. tit. 43, § 959 (Purdon Supp.1978). Wagner was notified of this disposition by letter dated February 10, 1978. Exhibit W–8 to White Affidavit. On March 7, 1978, Wagner's attorney petitioned the Commission for a reconsideration of its decision that it lacked jurisdiction over Wagner's complaint. Exhibit A to Plaintiff's Answer to Motion for Summary Judgment (Document No. 20). Based on subsequent correspondence with the Commission, Wagner's attorney contends that the Commission has deferred a ruling on his petition for reconsideration until the conclusion of the instant proceeding.

Inasmuch as this avenue of administrative review remains open to Wagner, I decline to entertain these state-law claims here. The issues most immediately raised by these claims are (1) whether Wagner's failure to comply with the 90-day filing requirement may be excused on equitable grounds, and (2) if not, whether that failure bars Wagner from obtaining any relief under the Pennsylvania Human Relations Act, either in state court or in federal court. Previous decisions under the Pennsylvania Human Relations Act shed no light at all on these questions, and Wagner could almost certainly obtain "a surer-footed reading of applicable law" by presenting these issues to the Commission (on his petition for reconsideration) and, if need be, to the Pennsylvania courts (in a proceeding to review the Commission's decision). *United Mine Workers v. Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. 1130, 1139. In light of the ready availability of review within the state system, and in light of the novel state law issues raised by Wagner's claims, I conclude that the discretionary exercise of pendent jurisdiction over those claims would be inappropriate. Accordingly, Wagner's claim under the Pennsylvania Human Relations Act will be dismissed for want of subject-matter jurisdiction.

### WAGNER'S CLAIM FOR BREACH OF CONTRACT

Wagner also advances a state-law contract claim, which he contends may properly be heard under the doctrine of pendent jurisdiction. Sperry Univac does not dispute the propriety of exercising jurisdiction over the contract claim, but it argues that Wagner has no cause of action and that summary judgment should therefore be entered in its favor. Although Wagner's factual showing on this issue is extremely weak, I conclude that a factual issue exists and that summary judgment may not properly be granted at this time.

It is undisputed that Wagner and Sperry Univac never entered into a written contract governing Wagner's employment. N.T. 261; Volz Affidavit ¶ 4. Wagner contends, however, that an unwritten employment contract did exist. Complaint ¶¶ 17–

---

**6.** Sperry Univac relies on *Pandis v. Sikorsky Aircraft Div. of United Technologies Corp.,* 431 F.Supp. 793, 796 (D.Conn.1977), in which Judge Newman held that, as a general rule, "it would be inappropriate for a federal court considering a federal ADEA claim to assume pendent jurisdiction over a cause of action grounded in state law." Judge Newman based his ruling on section 14(a) of the Act, which provides that a suit brought under the Act shall "supersede" any previously commenced "State action" brought by the same plaintiff. In my view, section 14(a) may quite plausibly be read as applying only to actions brought in state court, rather than as applying to all actions based on state law. This ambiguity in the statutory language is not resolved by the legislative history of either the original Act or the 1978 amendments. Under the circumstances, I believe it is preferable to treat each case on its own merits, rather than to hold that pendent jurisdiction over state-law age discrimination claims is generally inappropriate.

21. Moreover, Wagner urges that certain provisions of Sperry Univac's personnel manual supplied some of the terms of this contract. In particular, Wagner focuses on a provision to the effect that Sperry Univac's policy, in deciding which employees should be laid off during a reduction in force, is to use length of service as the "governing factor" where two or more employees have roughly equal education, experience, and ability. Plaintiff's Memorandum of Law (Document No. 21) at 7. Wagner contends that Sperry Univac breached its contract with him by laying him off when adherence to this provision would have insured his continued employment.

Sperry Univac urges, however, that Wagner was employed under an at-will arrangement, and that, under Pennsylvania law, such a relationship "can be terminated by either the employer or the employee for any or no reason." Defendant's Memorandum of Law (Document No. 18) at 16. It follows from this, according to Sperry Univac, that Wagner simply has no cause of action for the termination of his employment.

■ I believe that this argument rests on an overly restrictive view of the at-will employment relationship. Such a relationship is not inevitably a legal nullity. Suppose, for example, that $A$ and $B$ enter into an agreement whereby $A$ will perform certain clerical services for $B$ and will receive a stated hourly wage in exchange for those services. Both parties intend, let us assume, that this arrangement may be terminated by either party at any time, without prior notice, and without any showing of cause. No enforceable contract exists at the time the parties enter into this agreement, because $A$ has made only an illusory promise. $A$ remains free to renounce the entire agreement without ever beginning to perform the specified services. Although no contract yet exists, $B$ has in effect promised to pay $A$ a given amount for such services as $A$ actually performs. Thus, if $A$ begins to perform the specified services, he has accepted $B$'s offer, and an enforceable unilateral contract then exists with respect to the services $A$ has actually performed. *See* 1 Corbin on Contracts § 70 at 292–93 (1963); *id.* § 96 at 416–20. Because $A$ is an "at will" employee, however, both parties remain free to terminate the relationship at any time with respect to $A$'s future services.

Suppose now that $A$ has been working for $B$ for quite some time, and that $B$ now raises $A$'s hourly wage. $B$ has, in effect, modified the terms of their agreement. $A$ need not expressly accept this modification. If $A$ continues to work for $B$ beyond the effective date of the raise, he will be able to enforce the unilateral contract and recover wages at the higher rate for any services actually performed. $A$ is still an "at will" employee, and both parties retain the power to terminate the agreement at any time, but this does not prevent $A$ from enforcing his rights with respect to the executed portion of the contract. *Cf.* 1 Corbin on Contracts § 70 at 294 (1963) (unilateral contract exists where employer offers a bonus on the condition that employee remain in service for a given length of time and employee fulfills this requirement).

■ Wagner's claim against Sperry Univac must be analyzed in light of the foregoing discussion. In essence, Wagner contends that Sperry Univac modified the terms of their agreement after he had worked there for some time by promulgating certain personnel policies, and he seeks to enforce those policies as part of a unilateral contract. He does *not* contend that he was discharged *without cause*; nor does he contend that the parties contemplated a term of employment longer than the twenty-odd years he actually worked for Sperry Univac. *See generally* note 1 *supra*. Neither claim would be tenable in light of Wagner's failure to produce any evidence that he was employed on any basis other than at the will of both parties. *See, e. g., Lubrecht v. Laurel Stripping Co.*, 387 Pa. 393, 127 A.2d 687 (1956). The claim that Wagner does assert here, on the other hand, simply does not face the same hurdle.

Sperry Univac objects that, absent some consideration for its "promise" to adhere to the terms of its personnel manual, that "promise" is not enforceable as part of Wagner's employment contract. Wagner, for his part, evidently accepts this premise.

He contends, however, that the requisite consideration was present here:

"In laying off Plaintiff while retaining and advancing younger, less experienced individuals with fewer years of service, Defendant violated the above provisions [of its personnel policies]. Those policies were part of a bargained-for contractual relationship between the parties since, in reliance on those policies, Plaintiff continued in Defendant's employment and waived his right to look elsewhere for employment. . . . Pennsylvania law is settled that the waiver of a right or forbearance to exercise a right is sufficient consideration for a promise."

Plaintiff's Memorandum of Law (Document No. 21) at 8 (citations omitted).

Sperry Univac argues further that Wagner may not invoke the principle that forbearance to exercise a right is sufficient consideration for a promise. It asserts that nothing in the record lends any support to Wagner's claim that he stayed with Sperry Univac in reliance on its personnel policies. Although the record is certainly not compelling on this point, Wagner's deposition does contain the following exchange, which I believe gives rise to a factual issue:

"Q Now on page seven, under the third count, you talk about violation of contractual rights. Are you saying that you had an actual contract of employment with Sperry UNIVAC?

A No. I think it's an implied contract.

Q How is it implied?

A Well, the company tells you that, you know, we're people-oriented. They have personnel policies that say length of services will be the determining factor if there's a reduction in work force. We get notices from management saying that, you know, employees will be treated fairly and et cetera, et cetera, you know.

And they show you movies saying, you know, people; that's the big thing. So you say gee, I'll stay with this company, you know."

N.T. 259.

This evidence, while hardly compelling, is sufficient to preclude the entry of summary judgment on the present record.

For the reasons stated above, I find that Wagner's contractual claim is not barred simply because he was an at-will employee and that a factual issue bearing on that claim remains unresolved. Accordingly, I will deny Sperry Univac's motion for summary judgment.

ORDER

This 6th day of September, 1978, it is ORDERED

1. Defendant's Motion to Strike the affidavit of Plaintiff's counsel is GRANTED, said motion being unopposed.

2. Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's claim under the Age Discrimination in Employment Act only insofar as that claim is based on allegedly unlawful acts occurring before March 30, 1975.

3. Plaintiff's claim under the Age Discrimination in Employment Act is DISMISSED insofar as it requests (a) punitive damages or (b) damages for emotional distress.

4. Plaintiff's claim under the Pennsylvania Human Relations Act is DISMISSED for lack of subject-matter jurisdiction.

5. In all other respects Defendant's Motion for Summary Judgment is DENIED.