Dale H. CUTRIGHT, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

Civ. A. No. 76–621.

United States District Court,
W. D. Pennsylvania.

March 7, 1980.

---

Wm. H. Hauser, Anderson, Moreland & Bush, Pittsburgh, Pa., for plaintiff.

Eric P. Reif, Robert E. Sheeder, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

Plaintiff Dale H. Cutright filed this suit against General Motors Corporation (G.M.) alleging that G.M.'s decision to lay-off plaintiff and their subsequent refusal to recall him constituted a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and a common law breach of contract. Presently before the court is G.M.'s motion for summary judgment on count I of the complaint, the age discrimination claim, on the ground that it is time-barred under 29 U.S.C. § 626(d).[1] For the reasons set forth below we will grant the motion.

---

1. The text of § 626(d) reads as follows:

(d) No civil action may be commenced by any individual under this section until the indi-

The facts relevant to disposition of this motion may be summarized as follows. On May 31, 1970, plaintiff was laid-off from his position as a G.M. field representative in the Dealer Business Management Department in defendant's Pittsburgh territory.[2] The G.M. salaried employees' handbook provides that lay-offs within a job classification of a certain company department will be made on the basis of seniority. Plaintiff alleges that even though he had greater seniority than others throughout the country in his department he was selected for lay-off because he was over fifty years of age. This is alleged to constitute both a violation of the ADEA and a breach of contract.[3]

The salaried employees' handbook also gave persons in plaintiff's position recall rights for a five year period. Basically, those recall rights provided that, within a given area, laid-off employees would be asked to fill any subsequent job openings for which they were qualified before consideration would be given to "outsiders." From the time of plaintiff's lay-off until the end of his recall period on May 31, 1975, several "outsiders" were hired as field representatives in territories other than Pittsburgh. Plaintiff alleges that he was not recalled for any of these positions because of his age.

Following termination of his recall rights on May 31, 1975, plaintiff was advised by defendant in August of 1975 that the company wanted to place him on early retirement. At that time plaintiff requested to be reinstated, but this request was not granted. Some time thereafter plaintiff accepted early retirement, which became effective on October 1, 1975.

On January 13, 1976, plaintiff sent a notice-of-intent-to-sue letter to the Secretary of Labor (Secretary) pursuant to 29 U.S.C. § 626(d). On February 24, 1976, plaintiff filed a complaint with the Fair Employment Practices Commission of California, the state in which he was then residing. That complaint was subsequently dismissed for lack of jurisdiction. Plaintiff then filed a complaint with the Pennsylvania Human Relations Commission on August 25, 1976, but on March 4, 1977, that complaint was dismissed as being untimely.

In its motion for summary judgment, defendant contends that plaintiff failed to meet the § 626(d) time limitation for the filing of notice to the Secretary following the occurrence of the alleged discrimination. Section 626(d) requires that notice be given to the Secretary within 180 days of the alleged discrimination, or within 300 days if the alleged discrimination occurs in a state having its own laws prohibiting such discrimination and an agency empowered to grant relief therefrom.[4] Pennsylvania, the state in which the discrimination alleged here occurred, has designated such an agency, the Pennsylvania Human Relations

vidual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

    (1) within one hundred and eighty days after the alleged unlawful practice occurred, or

    (2) in a case to which 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

2. According to defendant, a field representative's function is to insure that G.M. dealers employ accepted company bookkeeping procedures.

3. The record reveals some question of whether plaintiff is asserting that the initial lay-off was occasioned by his age. Plaintiff's pretrial nar-

rative statement and pages 50, 51, and 61 of his deposition suggest that the age claim pertains only to defendant's failure to recall him. However, the briefs submitted by both parties on the instant motion indicate that age discrimination is claimed for the lay-off also. Since ¶ 21 of the complaint can be interpreted as asserting an age discrimination claim arising out of the lay-off, we will resolve the question in plaintiff's favor and proceed under the assumption that such is indeed the case.

4. Subsequent to the filing of this suit, § 626(d) was amended to require the filing of a "charge" with the Secretary rather than a notice of intent to sue, but the applicable time periods remain the same.

Commission.[5] States such as Pennsylvania are often termed "deferral states."

■ We must first decide in ruling upon this motion when the applicable limitation period, whether it be 180 or 300 days, began to run, i. e., when did plaintiff's cause of action accrue. We consider initially plaintiff's claim for discriminatory lay-off. The general rule in this Circuit was stated in *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3rd Cir. 1977) as follows:

> The . . . period does not begin to run until the employee knows, or as a reasonable person should know, that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer. Until that time he may have reason to believe that his status as an employee has not finally been determined, and should be given an opportunity to resolve any difficulty while he continues to work for the employer. 569 F.2d 192.

Subsequent applications of that rule in this Circuit indicate that where the employee is discharged or laid-off, the day in which he last rendered services is to be deemed the point at which the employer has "made a final decision." *Mazzare v. Burroughs*, 473 F.Supp. 234 (E.D.Pa.1979); *Wagner v. Sperry Univac*, 458 F.Supp. 505 (E.D.Pa.1978). Thus, in plaintiff's case the statutory period for discriminatory lay-off would begin to run on the day he last worked, May 31, 1970.

Plaintiff claims that the accrual date should be much later, arguing that his lay-off, when coupled with the subsequent refusals to recall, constituted a single "continuing violation" which ended only when he was placed on early retirement in October of 1975. In support of this position plaintiff contends that up until that time defendant could have remedied its past violations by recalling him and that, therefore, no "final decision" was made until he was retired. This argument has been rejected by courts in this Circuit, *see Mazzare, supra*, and *Wagner, supra*, and in others, *see Thomas v. E. I. Dupont*, 574 F.2d 1324 (5th Cir. 1978); *Charlier v. S. C. Johnson & Son, Inc.*, 556 F.2d 761 (5th Cir. 1977); *Woodburn v. LTV Aero Space Corp.*, 531 F.2d 750 (5th Cir. 1976); *Hiscott v. General Electric Company*, 521 F.2d 632 (6th Cir. 1975), which hold that the mere refusal to recall or rehire an employee does not convert his initial lay-off into a "continuing violation." As many of these courts note, any other rule would virtually emasculate the notice requirement, for the power to recall an individual would obviously exist up until the actual filing of the notice. Thus, plaintiff here would have no logical reason for denoting the date of his retirement as the end of the "continuing violation," since G.M. obviously remains free to this very day to rehire him. Accordingly, we hold that there was no "continuing violation" lasting until October 1, 1975, but rather that plaintiff's lay-off itself was the operative event and that any claim arising from the *lay-off* accrued on that day, May 31, 1970.

■ We next consider the second basis of plaintiff's age discrimination claim, namely, the defendant's alleged refusal to recall him in accordance with stated company policy. As noted above, the mere failure to recall a laid-off employee does not transform his original lay-off into a continuing violation. However, where, as is alleged in this case, the employer decides to fill a previously vacant position and in so doing refuses on the basis of age to recall a person otherwise qualified for the job, a new violation of the Act, separate and distinct from the initial lay-off, has occurred. Thus, in each instance where G.M. filled a position covered by plaintiff's recall rights plaintiff could assert a cause of action. The parties agree that the last such hiring occurred on December 1, 1974. That date therefore is the latest date for the accrual of plaintiff's claim based on discriminatory failure to recall.[6]

---

**5.** See 43 Pa.Stat.Ann. § 956.

**6.** Our inspection of the record reveals that on three separate occasions from August through October of 1975 ___ all within the 180 day

■ Having determined when plaintiff's claims accrued, we must now decide whether he had 180 or 300 days therefrom in which to file his notice. Footnote 5 of *Bonham, supra,* is particularly relevant to this issue. There the court considered whether or not the 300 day period provided to plaintiffs in deferral states may be invoked where the complainant failed to file a charge there and thus did not avail himself of the local remedy. The court stated:

> We reject the proposition that Bonham may invoke the extended 300 day period of section 626(d)(2) notwithstanding his failure to make a timely state filing. [Citation omitted]. Any other rule would mean that plaintiff could intentionally wait until after the state filing period had run, and then take advantage of the lengthier federal filing period. This was surely not the intent of Congress. [Citation omitted]. 569 F.2d 192, fn. 5.

■ Plaintiff did not file a complaint with the Pennsylvania Human Relations Commission prior to commencing the instant action. Under these circumstances, *Bonham* would limit plaintiff to 180 days within which to file his notice. Therefore, any claim accruing here prior to approxi-

mately mid-July, 1975, would be time-barred. This bars substantially all of plaintiff's age discrimination count.[7] Even if we were to accept plaintiff's suggestion and deem his good-faith February 24, 1976, filing in California to be a Pennsylvania filing, it would not help him, since *Bonham* speaks of a *timely* state filing, and plaintiff's vicarious Pennsylvania filing would have been beyond the 90 day limitation established by that state in 43 Pa.Stat.Ann. § 959.[8] For that matter, even if we applied the 300 day limitation the essence of plaintiff's claim would still be time-barred, it having accrued on May 31, 1970, and December 1, 1974, respectively.

■ Finally, while it is true that under *Bonham* the statutory notice period is subject to equitable tolling, we have no genuine factual dispute which, if resolved favorably to plaintiff, would cause us to extend or toll the period so as to revive any claims otherwise deemed to be time-barred by our discussion above. Unlike *Bonham* there has been no suggestion here that defendant failed to advise employees of the existence of the Act, or that it gave plaintiff false encouragement in response to his request for reinstatement.[9] Nor has there been any

period ___ plaintiff requested, and was denied, reinstatement as an alternative to his acceptance of early retirement. Plaintiff's deposition 34–37. It is uncertain whether or not plaintiff is now relying on any of those incidents as the basis of a refusal to rehire claim. While it does appear that his claim in that regard is directed primarily to the defendant's filling of specific job vacancies as mentioned in the text, to the extent that plaintiff is relying on those denials of reinstatement in the Fall of 1975, he would not be barred by the § 626(d) time limitation. Of course, his proof must establish that those denials themselves were discriminatory, *Masco v. United Airlines,* 574 F.2d 1127 (3rd Cir. 1978). In which event, of course, his damages would flow from that point forward.

7. It would not bar any aspect of the claim which may be based on the facts noted in fn. 6. Unfortunately, from plaintiff's standpoint, however, it is doubtful that those events encompass the thrust of his ADEA claim.

8. We realize that *Bonham* dealt with a situation where no state filing at all had been made and that, therefore, it might be argued that *Bonham* expressed no view regarding a situa-

tion such as ours where the state filing is merely untimely. We do not believe that *Bonham* should be read so restrictively. If, as we believe, the purpose of the longer 300 day period is to provide local authorities a fair opportunity fully to consider a plaintiff's claim, it seems fair and logical to conclude that there is no need for such an extended time period where, because of an untimely state filing, there will be a *summary* disposition of the state claim. Moreover, to hold otherwise would be to invite and encourage the mischief of filing untimely state claims for the sole purpose of resurrecting time-barred ADEA claims. To the extent that authority exists for a contrary application of § 626(d)(2), *see,* for example, *Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir. 1979) we decline to accept it in light of the language in *Bonham.*

9. As to the latter point, the opposite in fact affirmatively appears of record in plaintiff's deposition at pp. 34–37 and 82–84, where plaintiff indicates that he was unequivocally told by defendant that he had no chance of being recalled.

suggestion such as the one made in *Griffin v. First Pennsylvania Bank*, 443 F.Supp. 563, 567 (E.D.Pa.1977) that plaintiff filed his notice within 180 days of his *discovery* of defendant's discriminatory motivation.[10] Indeed, the only equitable circumstance cited by plaintiff was his good-faith, but improper, state filing in California instead of Pennsylvania. But, as noted above, even if we indulged plaintiff on that point it is of no assistance to him. Accordingly, the motion of the defendant for summary judgment will be granted to the extent consistent with this opinion.[11]

---

**10.** Again, the opposite affirmatively appears from the record. Plaintiff states in his brief that he retained counsel in the Spring of 1975 after hearing that defendant had hired new and younger people into his former position.

**11.** The motion itself was cast in general terms asserting that the action as a whole was time-barred. Defendant's brief and argument, however, were addressed solely to the age discrimination claim. Hence, this opinion is not to be perceived as making a determination adverse to the plaintiff on the breach of contract claim embodied in Count II. Indeed, we see no basis for concluding that it is time-barred.