James H. NOGAR, Plaintiff,

v.

HENRY F. TEICHMANN, INC., Defendant.

Civ. A. No. 84–1301.

United States District Court, W.D. Pennsylvania.

Nov. 21, 1985.

---

* "Rule 59(e) may be utilized in timely attempts to vacate judgment." *Huff v. Metropolitan Life Ins. Co., supra.*

S.J. Hayden and Robert N. Peirce, Jr., Murovich, Peirce & Stamp, and James R. Duffy, Pittsburgh, Pa., for plaintiff.

David A. Luptak, Meyer, Unkovic & Scott, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before us is Defendant's Motion for Summary Judgment in above captioned action. Plaintiff's Complaint alleges one count of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1982), one count of age discrimination under the Pennsylvania Human Rights Act ("PHRA"), 43 P.S. §§ 951–963 (Purdon 1965 & Supp.1984), and three counts under Pennsylvania common law. The latter four counts are before us on the basis of pendent jurisdiction. Since we find Plaintiff's age discrimination claim under the ADEA without merit, we will decline jurisdiction over Plaintiff's pendent state claims.

*Facts*

Plaintiff's claims arise from his discharge from Defendant company after 17 years of service. He was hired on May 1, 1965 and over the years served as Technical Service Representative, Manager of Technical Services, Salesman in both the

Domestic and International areas and finally as International Sales Manager. Affidavit of James H. Nogar, at ¶ 2. On May 28, 1982, Plaintiff was laid off and advised that, if he was not recalled within 90 days he should consider the lay-off to be permanent. At the same time, he was informed that the reason for his lay-off was a downturn in business. *Id.*, at ¶ 5; Affidavit of Archie L. McIntyre, at ¶ 9.

On October 21, 1982, Plaintiff withdrew his pension funds, which act, he maintains, terminated his employment status.

On March 29, 1983, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") citing August 26, 1982, 90 days from the date of his lay-off, as the date of the most recent or continuing discrimination against him by the Defendant. Plaintiff never filed a charge with the Pennsylvania Human Rights Commission ("PHRC"). Deposition of James H. Nogar at ¶ 42. However, pursuant to a work-sharing agreement, the EEOC transmitted the charge to the PHRC on March 31, 1983. Pretrial stipulation at ¶ II.

Plaintiff claims that Defendant posted no notices advising employees of the existence of or the provisions of the ADEA as required by the Act. *See* 29 U.S.C. § 627. Even so, he claims no knowledge of facts which would have supported such a claim until March 25, 1983 when E. Mason Ashby, an employee in Defendant's International Sales Department, informed him that younger employees were not laid off. Affidavit of James H. Nogar, at ¶¶ 7 & 8.

Defendant argues that Plaintiff failed to file his charge with the EEOC in a timely manner. Alternately, Defendant argues that Plaintiff was laid off as a result of sales downturns producing net losses, and not due to his age.

## Summary Judgment

When considering a motion for summary judgment, the Court must determine if there are material facts in dispute. In so doing, the Court must view all facts in the light most favorable to the non-moving party. *Sun Refining and Marketing Co. v.*

*Rago,* 741 F.2d 670, 673 (3d Cir.1984). The burden is on the moving party to show that no genuine issue of material fact exists. Fed.R.Civ.P. 56; *Wolk v. Sakes Fifth Avenue, Inc.,* 728 F.2d 221 (3d Cir.1984).

## Timeliness of Charge Filed

A charge of discrimination must be timely filed with the EEOC prior to the initiation of an action in federal court. *Love v. Pullman,* 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972). Under the ADEA, two different time limits are applied to determine when the charge must be filed with the EEOC depending on whether or not the unlawful practice occurred in a deferral state: If the unlawful practice occurred in a nondeferral state, the complainant must file within 180 days; but if it occurred in a deferral state, the time limit is extended to 300 days. 29 U.S.C. § 626(d). Pennsylvania is a deferral state. *See Seredinski v. Clifton Precision Products Co.,* 776 F.2d 56 (3d Cir.1985); *Butz v. Hertz Corp.,* 554 F.Supp. 1178, 1180 (W.D.Pa.1983) (Cohill, J.); *Cutwright v. General Motors Corp.,* 486 F.Supp. 590, 592–93 (W.D.Pa.1980).

In a deferral state, the complainant must allow the state agency 60 days to take action on his charge before he files suit in a federal district court. 29 U.S.C. § 633(b). Although there are similarities between the limitations periods in Title VII and the ADEA, *see Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed. 609 (1979), they differ significantly with regard to the 60–day deferral period. Under Title VII, the claimant must file a charge with the state agency 60 days before filing with the EEOC, *see* 42 U.S.C. § 2000e–5(c), thus the 300–day limitation period is effectively cut to 240 days unless the state proceedings are terminated in less than 60 days. *Mohasco Corp. v. Silver,* 447 U.S. 807, 814, 100 S.Ct. 2486, 2491, 65 L.Ed.2d 532 (1980); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1211 (3d Cir.1984). Under the ADEA, however, the federal court and not the EEOC must defer to the state so the 240–day rule does

not apply. *Seredinski*, 776 F.2d at 61. A claimant under the ADEA may file simultaneously with the state agency and the EEOC without raising a deferral problem. *Id.*

Where a claimant files initially with the EEOC rather than the state agency, the EEOC must refer the charges to the state agency. 29 C.F.R. § 1601.13 (1985). The EEOC referral entitles the claimant to the 300–day extended filing period provided in § 626 even though filing is untimely under state law. *Id.* at 10–11; *Howze*, 750 F.2d at 1210 (citing *Mohasco*, 447 U.S. at 815–16, 100 S.Ct. at 2491–92); *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 751 (3d Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983) (citing *Davis v. Calgon Corp.*, 627 F.2d 674, 675 (3d Cir.1980) (per curiam), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 897, 66 L.Ed.2d 827, *reh'g denied*, 450 U.S. 971, 101 S.Ct. 1494, 67 L.Ed.2d 623 (1981)).

Under Pennsylvania law, for example, a claimant must file a charge with the PHRC within 90 days. 42 Pa.Stat.Ann. § 959 (Purdons Supp.1977). Under the ADEA, a claimant has 300 days to file a charge in a deferral state. Since the state statute can not shrink the filing period set by federal law, a claim filed with the PHRC 300 days after the unlawful practice allegedly occurred must be deemed timely for federal purposes even though it is untimely for state purposes. *See Bonham v. Dresser Indus. Inc.*, 569 F.2d 187, 194 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978).

In order to determine when the 300–day period should begin to run, we must establish the date on which the alleged unlawful employment practice occurred.

> Although no simple rule can be formulated which will deal adequately with all factual situations, where unequivocal notice of termination and the employee's last day of work coincide, then the alleged act will be deemed to have occurred on that date, notwithstanding the employee's continued receipt of certain employee benefits such as periodic severance payments or extended insurance coverage.

*Id.* at 191 (emphasis added, citations omitted).

May 28, 1982, the day Plaintiff was laid off, was undisputedly Plaintiff's last day of work. However, Plaintiff argues that his lay off was only temporary at that time and would not become permanent for 90 days. Hence, Plaintiff argues that he was not unequivocally terminated until at least 90 days after his last day of work. Alternately, Plaintiff characterizes his lay off as a "continuing violation" also delaying the onset of the 300–day period.

The law in this circuit is clear that a lay off, no matter the condition under which it was made or the likelihood of recall, becomes permanent for the purposes of determining when termination occurred under § 626 or § 633 at the time of the initial layoff. *Cutright*, 486 F.Supp. at 593; *Mazzare v. Burroughs Corp.*, 473 F.Supp. 234, 238 (E.D.Pa.1979); *Wagner v. Sperry Univac*, 458 F.Supp. 505, 512 (E.D. Pa.1978), *aff'd*, 624 F.2d 1092 (3d Cir.1980).

> Where an employee ... receives notice that he is being laid off but that he remains eligible for rehire, he has received "unequivocal notice of termination" notwithstanding the possibility that he will be rehired in the future.
>
> \*   \*   \*   \*   \*   \*
>
> Once an employee is laid off, his present status is no longer uncertain; any uncertainty is confined to his future employment status.

*Wagner*, 458 F.Supp. at 512. Hence, we cannot agree with Plaintiff's characterization of the lay off as temporary or continuing and thereby delay the running of the 300–day period.

We note that several other circuits concur with our treatment of a lay off as a final termination and similarly refuse to apply the concept of "continuing violation" where no claim of failure to rehire was made. *See, e.g., Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 25 (2d Cir.1985), *Lawson v. Burlington Industries, Inc.*, 683 F.2d 862 (4th Cir.)

*cert. denied,* 459 U.S. 944, 103 S.Ct. 1395, 74 L.Ed.2d 201 (1982); *Thomas v. E.I. DuPont de Nemours & Co.,* 574 F.2d 1324 (5th Cir.1978); *Griffin v. Pacific Maritime Assoc.,* 478 F.2d 1118 (9th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973).

■ Having determined that the 300–day period began to run on May 28, 1982, and having determined that Plaintiff did not file a charge with the EEOC until March 29, 1983, we must conclude that Plaintiff's claim is time-barred.

Plaintiff argues that certain equitable considerations tolled the running of the filing period. Specifically, Plaintiff claims that 1) Defendant failed to post notice of employee rights under the ADEA notice as required by 29 U.S.C. § 627; and 2) Plaintiff did not become aware of the hiring of a younger man to fill his position until four days before he filed with the EEOC.

■ Equitable tolling may be applied in appropriate circumstances to preserve a claim which otherwise would be time-barred since the filing requirement of the ADEA has been characterized as a statute of limitations rather than a jurisdictional requirement. *Bonham,* 569 F.2d at 192–93; *Butz,* 554 F.Supp. at 1180–81. The burden of proving facts to justify application of the doctrine of equitable tolling rests with the Plaintiff. *Byers v. Follmer Trucking Co.,* 763 F.2d 599, 600–01 (3d Cir.1985) (*per curiam*) (citing *Swietlowich v. County of Bucks,* 610 F.2d 1157, 1162 (3d Cir.1979)); *Butz,* 554 F.Supp. at 1181.

■ Generally, equitable tolling may be appropriate where 1) the Defendant has actively misled the Plaintiff; 2) the Plaintiff has "in some extraordinary way" been prevented from asserting his rights; or 3) the Plaintiff has timely asserted his rights but in the wrong forum. *Slenkamp v. Borough of Brentwood,* 603 F.Supp. 1298, 1303 (W.D.Pa.1985) (Cohill, J.) (citing *Kocian,* 707 F.2d at 753). An employer's failure to post the required notice will toll the running of the 300–day period, "at least until such time as the aggrieved person

seeks out an attorney or acquires actual knowledge of his rights under the ADEA." *Bonham,* 569 F.2d at 193; *Slenkamp,* 603 F.Supp. at 1303.

■ Plaintiff filed an affidavit stating that at no time during the 17 years that he worked for Defendant were notices posted as required under the ADEA. Affidavit of James H. Nogar, at ¶ 7. None of the affidavits or deposition transcripts filed on behalf of the Defendant even attempt to refute Plaintiff's statement regarding the lack of posted notice. We consider Defendant's failure to post notice to be undisputed. Where no notice was posted, the Defendant bears the burden of proving that the Plaintiff was aware of his rights. *McClinton v. Alabama By-Products Corp.,* 743 F.2d 1483 (11th Cir.1984).

Plaintiff admits having discussions with an attorney concerning his pension. *Id.,* at ¶ 5. Neither Plaintiff nor Defendant indicate that the attorney Plaintiff contacted to handle the pension matter ever discussed the possibility of an age discrimination suit during the early summer of 1982. See *Id.;* Affidavit of Gary M. Lucas, at ¶ 3.

The first indication we find in the record that Plaintiff was informed of the existence of the ADEA or the possibility of an action on his behalf under that Act appears in a letter to Plaintiff from the attorney who earlier handled his pension matter. That letter, dated August 26, 1982, concludes the attorney's representation of Plaintiff with regard to Plaintiff's benefit settlement with Defendant and then states as follows:

> If you happened to see the Pittsburgh Press on Sunday, there was an interesting article about lawsuits alleging age discrimination in termination of employees. Your settlement of the benefits issues is not preclude [sic] your pursuit of an action challenging the basic termination, but we would have to carefully review the facts of your case and other actions of the employer to see if we would have any basis under the current law for such an action.

Affidavit of Gary M. Lucas, at Exhibit B.

Based on the wording of the above quoted letter, it would appear that Plaintiff's

attorney first raised the issue of age discrimination and not the Plaintiff. Thus, Plaintiff could not be held to have sought out an attorney within the meaning of *Bonham*. Defendant offered no evidence suggesting that Plaintiff actually knew of his rights under the ADEA prior to receipt of that letter. Consequently, we consider the 300–day filing period to have been tolled at least until August 26, 1982.

Plaintiff's failure to discover grounds for filing an age discrimination charge will not support further equitable tolling unless Plaintiff can prove that he was actively misled. *Miller*, 755 F.2d at 24; *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982); *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir.1981); *Wilkerson v. Siegfried Ins. Agency, Inc.*, 621 F.2d 1042, 1045 (10th Cir.1980); *Coke v. General Adjustment Bureau, Inc.*, 616 F.2d 785, 790–91 (5th Cir.1980). We find no record of conduct by anyone associated with Defendant which could be construed as actively misleading the Plaintiff. However, since we find that the failure to post tolled the filing period until August 26, 1982, Plaintiff's charge must be construed as timely filed.

### Age Discrimination

Defendant argues that Plaintiff failed to allege a *prima facie* case of age discrimination under the ADEA. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the guidelines applicable to burdens of proof in "disparate treatment" cases under Title VII. These guidelines have been specifically applied to cases of age discrimination brought under the ADEA. *See e.g. Huhn v. Koehring Co.*, 718 F.2d 239 (7th Cir.1983); *Smithers v. Bailar*, 629 F.2d 892 (3d Cir.1980); *Marshall v. Roberts Dairy Co.*, 572 F.2d 1271 (8th Cir.1978); *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir.1977).

The Plaintiff, in an action under the ADEA, bears the initial burden of offering evidence sufficient "to create an inference that an employment decision was based on discriminatory criterion illegal under the Act." *Maxfield v. Sinclair International*, 766 F.2d 788, 791 (3d Cir.1985) (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)). In order to satisfy this burden, Plaintiff, in his *prima facie* case, must prove by a preponderance of the evidence that 1) he belonged to the protected age group; that is, between the ages of 40 and 70; 2) he was discharged; 3) he was qualified for the position; and 4) the position was ultimately filled by an employee younger than the Plaintiff. *Trainer v. Philadelphia National Bank*, 541 F.Supp. 195 (E.D.Pa.1982), *aff'd* 707 F.2d 1395 (3d Cir.1983).

The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employee's discharge. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. *See also, Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981); *Duffy v. Wheeling Pittsburgh Steel Company*, 738 F.2d 1393, 1395 (3d Cir.1984). The Defendant's burden is one of production, not of persuasion. He must produce only enough evidence to dispel the adverse interference created by the Plaintiff's *prima facie* case. *Bellissimo v. Westinghouse Electric Corp.*, 764 F.2d 175, 179 (3d Cir.1985); *Dillon v. Coles*, 746 F.2d 998, 1003 (3d Cir. 1984).

Once the employer has raised a legitimate, nondiscriminatory reason for dismissing the employee, the burden shifts back to the employee to show that the employer's reason is merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804–5, 93 S.Ct. at 1825, *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The employee must prove by a preponderance of evidence that "but for" his age, he would not have been discharged. *Lewis v. University of Pittsburgh*, 725 F.2d 910, 917 (3d Cir.1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984).

*See also Maxfield,* 766 F.2d at 791; *Bellissimo,* 764 F.2d at 179. The ultimate burden of persuading the trier of fact that the employer discriminated against the employee remains at all times with the employee. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214, 219 (3d Cir.1984); *Massarsky v. General Motors Corp.,* 706 F.2d 111, 117–18 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

▆▆ Plaintiff has made out a *prima facie* case. Specifically, he has alleged that 1) he was a member of the protected class in that he was 51 years old at the time of his layoff; 2) he was discharged by virtue of his layoff status; 3) he was qualified for the position by virtue of having worked for Defendant for 17 years in positions of salesman and sales manager of the International Sales Department; and 4) he was replaced by Richard Bennett, a younger man hired by Defendant on August 24, 1981 shortly before Plaintiff was laid off.

▆▆ Assuming Plaintiff could prove these allegations by a preponderance of evidence, Defendant has produced evidence uncontradicted by Plaintiff, that Plaintiff was discharged for a legitimate business purpose rather than because of his age. *Moorehouse v. Boeing Co.,* 501 F.Supp. 390 (E.D.Pa.) *aff'd,* 639 F.2d 774 (3d Cir.1980).

Newton N. Teichmann, Chairman of the Board of Directors and Director of the Sales Department of Defendant, supervised Plaintiff from the time he was originally hired by Defendant. Beginning in 1980, he became increasingly dissatisfied with Plaintiff's job performance. Affidavit of Newton N. Teichman, at ¶ 6. That same year, Defendant suffered a decline in sales, particularly in the International Department. The sales decline resulted in net losses for fiscal years 1980, 1981 and 1982. Affidavit of Newton N. Teichmann, at ¶¶ 7 & 8; Affidavit of Archie L. McIntyre, President of Defendant, at ¶ 3. In an attempt to prevent future losses, the officers of Defendant decided to reduce the work force. A study was performed to determine where labor costs could be reduced. That study indicated that only two employees were needed in the International Sales Department. Affidavit of Archie L. McIntyre, at ¶ 8.

In 1982, the International Sales Department employed four people: Mr. Teichmann, the Plaintiff, E. Mason Ashby and Kenneth Berghauer. Mr. Ashby, 65 years of age at the time, was sales representative in the Caribbean area and South America. In addition to his sales duties, he was manager of the Technical Service Department. Mr. Berghauer, the newest and youngest member of the department, shared the Caribbean and South America territory with Mr. Ashby. Affidavit of Newton N. Teichmann, at ¶ 9 Plaintiff was responsible for the Middle East and Far East, a territory previously covered primarily by Mr. Teichmann. During Plaintiff's tenure in that capacity, Mr. Teichmann remained active also. Affid. of Newton N. Teichmann, at ¶ 5.

As director of the department, Mr. Teichmann was instructed to lay off two employees. In light of Mr. Ashby's sales performance, his value as manager of Technical Services, and his experience as primary salesman for the Caribbean and South America, Mr. Teichmann determined that Mr. Ashby should be retained. Consequently, Plaintiff and Mr. Berghauer were laid off. Mr. Teichmann resumed primary responsibility for the Middle East and Far East territory. Affid. of Newton N. Teichmann, at ¶¶ 9 and 10.

Both Mr. Teichmann and Mr. McIntyre state that age was not a factor in the lay off decisions. Affid. of Newton N. Teichmann at ¶ 10; Affid. of Archie L. McIntyre, at ¶ 8. Aside from the Plaintiff, 12 other employees were laid off in an effort to reduce costs. The mean age of the work force prior to the lay offs was 41.59 and after was 43.07. Affid. of Archie L. McIntyre, at ¶ 10.

Richard Bennett, the man Plaintiff alleges assumed his duties after he was laid off, has a degree in Engineering and prior experience as a Manager of Engineering. Af-

fid. of Richard Bennett, at ¶ 3. He was hired to work under Mr. McIntyre in the Engineering Department and to assist David Defibaugh in the Domestic Sales Department. Affid. of Richard Bennett, at ¶ 2. Since Plaintiff's discharge, Mr. Bennett states that he has acted as technical advisor to the International Department, but has not assumed any sales duties. Affid. of Richard Bennett, at ¶ 4.

Plaintiff neither alleged facts tending to show that Defendant's nondiscriminatory reasons were a pretext for discrimination, nor contradicted those facts stated by Defendant in rebuttal. Consequently, no genuine issues of material fact remain to be decided by a jury on the issue of age discrimination. Rule 56(e) states that the adverse party may not rely on "mere allegations or denials of his pleadings," but must set forth specific facts showing a genuine issue for trial. Failure to do so makes summary judgment appropriate. Fed. Civ.P. 56(e). While Plaintiff has filed an affidavit in response to the Defendant's motion for summary judgment it does not satisfactorily speak to the factual allegations of the several affidavits filed in support of Defendant's motion for summary judgment. We will grant summary judgment for Defendant on this issue.

*Pendent Claims*

In light of our grant of summary judgment on the federal question, we find the federal forum inappropriate for determination of the remaining state claims. Therefore, we decline to exercise pendent jurisdiction over Counts 2, 3, 4 and 5. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Walck v. American Stock Exchange, Inc.*, 687 F.2d 778, 792 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983); *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195–96 (3d Cir.1976). Accordingly, we dismiss Counts 2–5 with leave for Plaintiff to effect transfer pursuant to the provisions of 42 Pa.C.S.A. § 5103(b) (Purdon Supp.1983) and in accordance with *Weaver v. Marine Bank*, 683 F.2d 744 (3d Cir.1982). *See McLaughlin v. ARCO Polymers, Inc.*, 721 F.2d 426, 430 (3d Cir.1983).